EMIL HEINEMANN et al., Respondents, *v.* JOHN HEARD et al., Appellants.

The burden of sustaining the affirmative of an issue involved in an action is upon the party alleging the facts constituting the issue, and so remains throughout the trial.

The giving of evidence sufficient to establish the fact *prima facie*, does not shift the burden; the question is to be determined upon all the evidence, and the jury must be satisfied, from the whole case, that the allegation is established.

In an action against agents for neglect to exercise proper care and diligence in making purchases for their principals, as ordered, the plaintiffs gave in evidence a letter of defendants, which they claimed to be an admission of the negligence charged. The court was requested by defendants' counsel to charge in respect to a specified period of time, in substance, that unless it appeared from the proofs that defendants could, with reasonable diligence, have made the purchases within the limits of their authority, they were not guilty of negligence in failing so to do, and that the burden of proving the negligence was upon the plaintiffs. The court refused so to charge, but instructed the jury that the burden of proof had been shifted by defendants' letter from plaintiffs to defendants.

*Held* error; that as to the period specified, the letter was not *prima facie* evidence of negligence; but that in any event the jury should have been

required to find from the whole evidence that plaintiffs had established their charge to entitle them to a verdict.

*Heinemann* v. *Heard* (2 Hun, 324) reversed.

(Argued April 29, 1875; decided September 21, 1875.)

APPEAL from a judgment of the General Term of the Supreme Court in the first judicial department, affirming a judgment in favor of plaintiffs, entered upon a verdict. (Reported below, 2 Hun, 324; 4 T. & C., 666.)

This action was brought to recover damages for an alleged breach of duty upon the part of the defendants, as the agents of plaintiffs.

Plaintiffs, who were doing business in the city of New York, entered into an arrangement with defendants, who were commission merchants doing business at Hong Kong and other places in China, under and by which defendants became correspondents of plaintiffs for the purchase of silks and teas. In 1864, plaintiffs sent to defendants a letter of credit for £15,000, with instructions to invest £5,000 in "No. 1 re-reeled silk," at specified prices, and £10,000 in teas; the letter of credit expired July 1, 1865. The letter of instructions reached defendants February 22, 1865. These instructions were modified by a subsequent letter which reached defendants July 6, 1865, by which the limited price for silks was increased five per cent, and other qualities of teas were substituted, and the time was extended to September 1, 1865. No purchases were made by defendants under these orders, and, by a letter which reached defendants August 7, 1865, the funds were applied to another account. In answer to letters of plaintiffs, requesting the reasons for the non-compliance with their orders, defendants wrote to plaintiffs a letter, dated December 14, 1865, so much of which as relates to the subject-matter in controversy is as follows:

"We first take up your credit for £15,000, with orders for Oolongs and silk.

"The order for Oolongs was impracticable.

"The order for silk reached us in February, when our market was nominally about $600. No stock was on offer, and

no supply was expected for several months, but with the arrival of the new silk in June, prices fell in consequence of unfavorable tidings in Europe; and the first contract was made at $545. A further decline was established in a few days, as home advices continued unfavorable, until the market reached $480 and $500, its lowest point, and at which we might have purchased; but with this recent decline, with continued unfavorable news from Europe in May, with then no expectation of a failure of the European crop, and with every expectation of an unusually large yield in China and Japan, we thought it best to delay purchases, in the hope that those influences would have a depressing effect, and enable us to act to more advantage. This was at the end of June; the next mail, of May twenty-sixth, from London, brought news of a sudden rise, and rumors of a short crop in Europe. This intelligence reached us on July sixth, and advanced our rates at once to $520 a $530. We felt much disappointed at this state of affairs, but still hoped for a reaction which would enable us to invest; but the succeeding mail brought news of higher prices in Europe, and of probable failure of the crop. Most unfortunately, too, many dealers here began to entertain fears regarding their supply, and would not contract under $570 a $580, although prices were nominally lower. From this point there has been a steady advance, and no opportunity for investing has occurred at your limits. We think that the reasons which prevented our action, while action was possible, are cogent, and as such demanded consideration. The small amount of business done during those few weeks would tend to show that we were not singular in the views we held. We delayed addressing you on the subject, hoping for a chance to buy, and our feeling of annoyance at being led to a wrong decision must be our excuse for not having done so later. We trust the arguments we adduce for the course we pursued will have sufficient weight with you, and convince you that we gave the subject proper consideration, and erred from a reasonable hope of doing better for you."

Defendants' counsel, among other things, requested the court to charge, that the extension of credit to September 1, 1865, did not reach the defendants until the sixth of July, and as they were not informed that the same was to be extended, they were therefore bound to act only upon the theory that their right to purchase and draw would end, and did expire, July first. The authority to purchase silks at the increased limit contained in the letter of May second, received by the defendants July seventh, expired on the seventh of August by the application of the credit to joint account; and unless it appears from the proofs that, prior to that time, the defendants could, with reasonable diligence, have so contracted for, procured the delivery of, and shipped the silk at the increased price specified, and of the required quality, they were not guilty of negligence in failing so to do, and the burden of proving this negligence is upon the plaintiffs. The court refused so to charge, but instructed the jury that the burden of proof had been shifted from the plaintiffs to defendants by the letter of defendants of 14th December, 1865, to which refusal and instruction defendants' counsel excepted.

Further facts appear in the opinion.

*John E. Ward* for the appellants. The judge erred in refusing to charge that plaintiffs had failed to show that defendants were guilty of negligence. (*Carpenter* v. *Smith*, 10 Barb., 664; *Bidwell* v. *Lemnet*, 17 How., 359; *Ernst* v. *H. R. R. R. Co.*, 21 id., 103; *Stewart* v. *Simpson*, 1 Wend., 376; 3 Hill, 287; 7 id., 329.)

*W. W. Mac Farland* for the respondents. There was no error in rejecting defendants' requests to charge. (12 N. Y., 236; 47 id., 282.)

CHURCH, Ch. J. Upon the previous appeal to this court the judgment was reversed and a new trial granted upon the ground that there was sufficient evidence to go to the jury upon the question of the negligence of the defendants in not

purchasing silk, and not procuring transportation for the same during the existence of the letter of credit. (50 N. Y., 27.) By reference to the opinion of RAPALLO, J., it will be seen that the conclusion was founded mainly upon the letter of the 14th of December, 1865, written by the defendants to the plaintiffs in answer to repeated calls from the latter, for the reasons why the defendants had not purchased the silk in June within the prescribed limit as to price, and gave as the only reason why they did not, that they thought prices would be lower, and they could purchase to better advantage. They did not claim that they were unable to purchase and procure the silk to be re-reeled in time to ship by the first day of July, when the letter of credit expired, nor that they were unable to obtain transportation to ship the property by that time. Hence, it was held by this court that this letter alone made a *prima facie* case of ability to purchase and ship, and that as the evidence given did not conclusively show any impediment to the performance of this duty, the question should have been submitted to the jury. This related to a purchase and shipment by the first of July, and not in July or after. The letter of credit expired on the first of July, and was extended by a notice which reached the defendants on the sixth of July; and the price allowed to be paid was increased five per cent and about the eleventh of July prices advanced beyond the limit fixed by the plaintiff, and on the seventh of August the fund was otherwise disposed of.

The defendants' counsel requested the court to charge, in respect to the period between the sixth of July and seventh of August, " and unless it appears from the proofs that prior to that time (August seventh) the defendants could with reasonable diligence have so contracted for, procured the delivery of, and shipped the silk at the increased price specified, and of the required quality, they were not guilty of negligence in failing so to do, and the burden of proving this negligence is upon the plaintiffs." The court refused so to charge, but instructed the jury that the burthen of proof had

been shifted from the plaintiffs to the defendants by the letter of defendants of 14th of December, 1865; to which refusal and instruction there was an exception.

The court charged that the jury might find for the plaintiffs for negligence in not purchasing and shipping after the sixth of July, if they believed that with reasonable diligence they could have done so; and then charged, in answer to the claim of the defendants that it was the duty of the plaintiffs to show that defendants had been in fault, that, in consequence of the letter of defendants, the burthen of proof was shifted, and it was their duty to show that there was some other excuse for not executing the order, and closed the charge by adding : " If they have shown to your satisfaction that it was impossible to execute the order for any reason whatever, then they are not responsible in this case ; otherwise they are." There was no exception to the charge, but the point was made by the exception to the refusal and instruction to the tenth request above referred to. The jury found a general verdict for the plaintiffs for $34,651.57, but whether for not purchasing in June or July does not appear. The jury may have found a sufficient excuse for not purchasing in June, and the recovery might have been for not purchasing after the sixth of July. After a careful consideration I find it impossible to sustain this ruling for two reasons: First. The letter of the 14th December, 1865, contains no express admission that the silk might have been purchased after the sixth of July within the price limited ; and I think a fair construction of the letter is that the excuse offered for not purchasing applied to the month of June only ; and that there is no implied admission even in the letter that they could have purchased afterwards. The letter in speaking of prices in June states : " A further decline was established in a few days, as home advices continued unfavorable until the market reached $480 and $500, its lowest point, and at which we might have purchased, but with this recent decline  *  *  *  we thought it best to delay purchases in the hope that those

influences would have a depressing effect and enable us to act to more advantage. *This was at the end of June;* the next mail of May twenty-sixth, from London, brought news of a sudden rise, and rumors of a short crop in Europe. This intelligence reached us on July sixth, and advanced our rates at once to $520 and $530. We felt much disappointed at this turn of affairs, but still hoped for a reaction which would enable us to invest, but the succeeding mail brought news of higher prices in Europe, and of probable failure of the crop. Most unfortunately, many dealers here began to entertain fears regarding their supply, and would not contract under $570 and $580, although prices were nominally lower. From this point there had been a steady advance," etc. The extreme limit which the defendants could pay was, prior to July first, about $525 per picul, and after the sixth day of July, $550 per picul. It is difficult to find any thing in this letter to justify an inference that the defendants might, with any degree of diligence, have purchased the silk within $550 per picul, which was indispensable to be established in order to entitle the plaintiffs to recover for not purchasing after the sixth of July. True, the letter states that the defendants "hoped for a reaction," but this is followed by the explicit statement that "many dealers * * * would not contract under $570 and $585, although prices were nominally lower." It would be a strained and harsh construction to infer that the defendants might have purchased at $550, upon the statement that many dealers would not contract under $570, and it does not appear that any would contract for less. While it may be assumed that the letter was intended to present the case as favorably for the defendants as the facts would warrant, yet it seems to be quite frank. As to the month of June, the defendants did not hesitate to admit that they might have purchased, and gave a reason for not doing so, which would not exonerate them from legal liability; but in respect to the period subsequent to the sixth of July, there is not only no express admission, but a statement of fact inconsistent with the practicability of purchasing. The usual way of purchas-

ing this silk was to contract for the purchase in advance of the delivery to enable sellers to perform the labor of re-reeling, which generally occupied some weeks, and it is not improbable that nominal quotations might be at a lower price than dealers would contract in advance for subsequent delivery when the market was excited and a rise anticipated. It was this state of things which the letter evidently intended to describe, as existing immediately after the sixth of July. It may be that purchases might have been made in July, but the letter, although proper to be considered upon the question, is not sufficient to prove it even *prima facie*, and it was therefore error to rule that the letter changed the burden of proof of negligence from the plaintiffs to the defendants, or that it established a *prima facie* case for not purchasing in July, and there is no intimation that such should be the effect of the letter in the former opinion of this court.

2d. It was error to refuse to charge that the burden of proving negligence was upon the plaintiffs, in respect to purchasing either in June or July. The charge against the defendants was, that they did not exercise proper care and diligence in the business of their agency. This was denied, and whether they did or not was the question to be decided. Upon this question the plaintiffs held the affirmative throughout the trial, and their relation to the question never changed. During the progress of a trial it often happens that a party gives evidence tending to establish his allegation, sufficient it may be to establish it *prima facie*, and it is sometimes said the burden of proof is then shifted. All that is meant by this is, that there is a necessity of evidence to answer the *prima facie* case, or it will prevail, but the burden of maintaining the affirmative of the issue involved in the action is upon the party alleging the fact which constitutes the issue, and this burden remains throughout the trial. (*Lamb* v. *Camden and Amboy R. R. Co.*, 46 N. Y., 271.) The question of negligence depended upon all the evidence, as well that which constituted a *prima facie* case against the defendants as all the other evidence produced by the plain-

tiffs tending to corroborate, and by the defendants tending to answer the charge; and the jury should have been satisfied from the whole case that the plaintiffs' allegation of negligence was proven. If, from the whole case, they were not satisfied, the defendants were entitled to a verdict. The learned judge put the case to the jury directly the reverse, and substantially directed them to find for the plaintiffs, unless the defendants had shown to their satisfaction that they were not guilty. The question of which party has the affirmative of an issue is in many cases very material, as the case might be one in which the jury might hesitate in finding that the plaintiff had established the charge, and yet when they would not find that it had been satisfactorily answered.

These views do not impair the proper force to be given to the letter in respect to the omission to purchase in June. It is claimed, on the one hand, that all the other evidence was subordinate in weight to the admissions, expressed and implied, contained in the letter, especially under the peculiar circumstances under which it was written; and, on the other hand, that it was a truthful statement for the equitable consideration of the plaintiffs, and was not inconsistent with the existence of some impediment to the execution of the order. This, in connection with the other evidence, was for the jury; and they should have been required to find, from the whole evidence, that the plaintiffs had established their charge in order to entitle them to a verdict. We do not deem it necessary to add any thing to what was said in the former opinion in respect to the rule of damages.

The judgment must be reversed, and a new trial granted, costs to abide the event.

All concur.

Judgment reversed.