# COURT OF APPEALS.

## HEILMANN agt. LAZARUS.

*Ejectment—Lease—When the question as to whether it is an inchoate, incomplete paper or not is to be decided by a jury as a question of fact—Charge of the judge thereon—Burthen of proof—What is a prima facie case—Extra allowance for costs—When no basis for it.*

A contract under seal may be explained by parol evidence to vary its apparent expression, showing it was not the intention of the parties to do as written, when the words are capable of two different constructions. Where a lease was made containing a clause for the purchase of the property "as per special agreement signed in the same time with this lease," it is competent to show by parol evidence that the said clause is the special agreement referred to, and that no other or separate paper was to be signed at the same time. It is competent for the jury to find that no further agreement was contemplated at the time of the execution of the lease, and that the lease was a complete and perfect contract.

The burden of the proof on the plaintiff is that of title and right of possession to the land ; this makes a *prima facie* case. It is not error to charge the jury that the lease is in form complete and signed by the parties, and it is needful for the defendant to establish his defense satisfactorily. This is not charging that the burden of proof is upon defendant to impeach the lease, nor is the burden of proof shifted ; it

Heilmann agt. Lazarus.

only means "there is necessity of evidence to answer the *prima facie* case or it will prevail."

Where the subject matter involved was the right of possession of real estate for two years subject to the rent reserved, and no money value of the right is shown, there is no basis for computation of an extra allowance.

*Decided, November,* 1882.

THIS was an action of ejectment tried at the circuit of the supreme court on the 28th day of October, 1880, before judge BEACH and a jury, to recover possession of the house and lot No. 331 East Forty-first street, New York city, under a lease for two years under seal made by the owner of the fee, Gustave Ramsperger, to the plaintiff for two years, from May 1, 1880, to May 1, 1882.

The defendant denied that he had "any knowledge or information sufficient to form a belief as to any and all of the allegations contained in the complaint herein, except that the defendant alleges that he is and has been in the lawful possession of the premises mentioned in the complaint herein since the 1st day of May, 1880."

On the trial, when the lease was offered in evidence properly acknowledged, the defendant objected, that the paper "appears upon its face to be an inchoate, incomplete paper; that there is no foundation laid for the admission of the paper, or any proof of title in Ramsperger; that it is not the whole contract between the parties." The objection was overruled, the defendant excepted and the paper was admitted and marked Exhibit B. It was the ordinary printed form of lease signed by the parties to it in the usual manner, and contained the following clause written in one of the blank spaces : " And it is further agreed between the parties to these presents that the party of the first part agrees to sell to the party of the second part, and the party of the second part agrees to buy from the party of the first part the house and lot herein leased for the sum of eight thousand dollars, lawful money of the United States, as per special agreement signed at the same

Heilmann agt. Lazarus.

time with this lease ; a sale of the property voids the lease;. and can be effected any time during the term of the lease· upon two months' previous notice given to the party· of. the· first part by the party of the second part of his intention. to effect the sale."

The defendant thereupon cross-examined plaintiff' and' he testified that he never had seen any special agreement or contract of sale and that only the lease and a· copy. had been drawn up or shown to him. In this he was· corroborated by ·his brother and servant who were present when· the lease was signed.

Plaintiff rested and defendant moved to· dismiss the complaint on the same grounds above stated;. as-to the admission· of the lease in evidence, and further that· there was no mutuality of contract, as plaintiff had not bound· himself to buy the house. The motion was denied and¹ defendant excepted. The defendant called Gustave Ramsperger; the·· owner, who testified that at the time of signing the lease· he· brought with him a contract of sale in duplicate form· for the· premises, and that the same is the draft of the· special agreement referred to in the lease.

That plaintiff, after the· signing· of the lease; refused to sign the contract of sale until he consulted a lawyer and took the copy contract for that purpose. Afterwards plaintiff said he would· not sign it. He, Ramsperger,· then rented the· house to the defendant, who was then in possession under·a· lease from him expiring May 1, 1880. The plaintiff in rebuttal. denied these statements.

The judge charged the jury, who rendered a verdict awarding the plaintiff the possession of the premises. The court granted the plaintiff an allowance of seventy-five dollars. The defendant excepted to the allowance as excessive, there being no basis upon which to fix such valuation, and entered the order granting the allowance. Defendant moved for a new trial upon the exceptions to the charge and taken upon the trial. The motion was denied and defendant excepted. The general

term of the supreme court, first department, affirmed the judgment and the order, with costs, and the defendant appealed to the court of appeals.

*Lewis Sanders*, of counsel (*Sigismund Kaufman*, attorney), for appellant, argued the following points:

I. Whether the agreement was a complete contract or not depends upon the clause above quoted. The special agreement never was signed. Was there a complete contract? Here is an agreement to make a contract of sale by which the lease was to be voided which was never executed. The attempt is to dissever so much of exhibit B as relates exclusively to a lease for two years from that part by which lease is to be determined and the rent extinguished. But the terms of exhibit B preclude any such legal computation as mortal to the whole, as it provided that "a sale of the property voids the lease." A sale, how? Why, according to the terms of the special agreement signed at the same time with the lease. There is no absolute term of leasing for two years, for on compliance with the terms of the special agreement of sale the lease is *ipso facto* terminated. These two clauses are inter-dependent, and neither can be eliminated and leave an entire contract, nor can the court make an agreement of sale or lease between the parties. The most that can be claimed is that it is an agreement to make an agreement which has been uniformly held to be non-enforceable. The test is, could either party have maintained an action for specific performance? Contract evidenced by two or more papers they must all be construed together (*Meyer* agt. *Hunke*, 55 *N. Y.*, 416; *Brown* agt. *N. Y. Central R. R. Co.*, 44 *N. Y.*, 80; *Foot* agt. *Webb*, 59 *Barb.*, 52, 55; *Lindsay* agt. *Lynch*, 2 *Schoales & Lefroy; Potts* agt. *Whitehead*, 5 *C. E. Green*, 60). The paper called a lease is insusceptible of specific performance (*Stanton* agt. *Miller*, 58 *N. Y.*, 203; *Shakespeare* agt. *Markham*, 72 *N. Y.*, 407).

II. Before breach a contract under seal cannot be modified

Heilmann agt. Lazarus.

by parol (*Delaroix* agt. *Buckley*, 13 *Wend.*, 71; *Allen* agt. *Jaguish*, 21 *Wend.*, 628; *Coe* agt. *Hobby*, 72 *N. Y.*, 148).

III. A deed referred to in another deed "is as if incorporated in it" (*Jackson* agt. *Parkhurst*, 4 *Wend.*, 369; *French* agt. *Carhart*, 1 *Comst.*, 96; *Hoppough* agt. *Strube*, 60 *N. Y.*, 433; *Marsh* agt. *Dodge*, 66 *N. Y.*, 533; *Whittelsey* agt. *Delaney*, 73 *N. Y.*, 575).

IV. The construction of a written instrument is a matter of law for the court. The plaintiff contends that the question as to whether or not the parties intended to execute another paper or not, or whether the paper, exhibit B, was a complete instrument, was tried as a question of fact and so submitted to the jury. If it had been so submitted it would have been clearly error. The court did not stultify itself. In his charge the learned judge said: "It is needful for the defendant to establish this defense to your satisfaction, because the plaintiff produces a lease which is in form complete and signed by the parties." The learned judge not only ruled exhibit B in as a perfect instrument in itself, but he charged the jury that it was "in form complete," and that it was for the defendant to show that it was not. If the charge had been directly the reverse of what it was there would have been ground for claiming that the jury had found as a fact that the instrument was complete, which question was not submitted to them as they were charged that it was complete as it stood. If the learned judge had submitted the instrument to the jury as a question of fact it would have been error (*The Arctic Fire Ins. Co.* agt. *Austin*, 69 *N. Y.*, 477).

V. The burden of proof was on the plaintiff. The plaintiff alleged title in himself; the defendant denied it. The burden of proving the fact was on plaintiff; the court charged the other way. In *Heineman* agt. *Hurd* (62 *N. Y.*, 455, 456) CHURCH, C. J.: "The burden of maintaining the affirmative of the issue involved in the action is upon the party alleging the fact which constitutes the issue, and the burden remains throughout the trial." *Lamb* agt. *Camden and Amboy Railroad* (46 *N. Y.*,

271) GROVER, J. : " The question of which party has the affirmative of an issue is in many cases very material as the case might be one in which the jury might hesitate in finding that the plaintiff had established the charge; and yet when they could not find that it had been satisfactorily answered" (*Banker* agt. *Banker*, 63 *N. Y.*, 409).

VI. The respondent's contention that the jury have settled an issue of fact by their verdict against the defendant is of no force in view of the charge of the court that the burden of proof was upon the defendant to overturn the lease perfect in form.

VII. There was no basis for the extra allowance of seventy-five dollars (*Coates* agt. *Geddard*, 2 *J. & S.* [*Sup. Ct.*], 118; *Spofford* agt. *Texas Land Co.*, 9 *J. & S.* [*Sup. Ct.*], 228; *People* agt. *Albany S. R. R.*, 5 *Lans.*, 25). This is estimating the value of a two years' lease, "the subject-matter involved" (*Sec.* 3253, *Code Civil Pro.*), at $1,500 over and above the rental which plaintiff had to pay, which was $1,700, together $3,200; that is, that the house worth $8,000 would rent for $1,600 a year, or twenty per cent of its value; and the court will assume this without evidence. The complaint does not allege the lease to be of any value; and there is no profit if it had any value. The jury did not find that the possession of the premises were of any value. As a matter of law the rent reserved is equivalent for the lease as agreed upon between the parties. The lessee must pay the rent to enjoy the lease. The rental and the use of the premises are equal; and the lease had no value beyond the rent (*Kelley* agt. *Dutch Church of Schenectady*, 2 *Hill*, 116; *Kinney* agt. *Watts*, 4 *Wend.*, 41).

*George F. Langbein*, for plaintiff, respondent, made and argued the following points :

I. Exhibit B, the lease, is a complete perfect paper on its face. As a lease it is a full, perfect and complete contract. It simply contains a further agreement, a special agreement

for the sale and purchase of the house by the respondent from the appellant at the election of the respondent. The lease was the usual printed blank form, containing blank spaces. The parties filled up one of these with writing in making their special agreement. The owner, Mr. Ramsperger, a German, to save a lawyer's charges acted as his own lawyer, drew the lease and filled up the blank space with the agreement for the purchase and sale of the house, and therein called it a special agreement. There was no sale, and could be none, until the plaintiff elected to buy as contained in that special agreement; and he had such election at any time during two years upon giving two months' previous notice. It was an executory agreement of sale, conditioned upon the election of respondent as provided in it, contained in the lease. This is what the German meant by writing "as per special agreement, signed in the same time with this lease." The words are not, "to be signed at the same time with this lease," as if another paper was to be signed when the lease was signed, but the words are of the present "signed in" the same with this lease, meaning the execution of both the lease and the special agreement at the same time in signing the one paper, the lease. It was signed at or in the same time with the lease as it was embodied in it. Both the lease and the special agreement were signed at the same time by signing the one paper. Appellant could not have meant by the words "special agreement" the contract of sale, else he would have so written. He meant the executory agreement for the sale if plaintiff should elect to buy during the term. He was writing the special agreement to be signed with the lease; "signed in the same time with the lease;" as it was contained in the lease when it was signed. If respondent gave the notice of his intention to effect a sale, in accordance with this special agreement, he was to pay $8,000 in cash, and the lease was void by being merged in the sale. He could not therefore mean the "contract of sale" by the words "special agreement," as respondent was not to buy until he gave

notice of his election to buy, and he had within two months of two years to do that. The lease was to be void when the sale of the property was effected. If the respondent was to have a lease, and in the same time must effect a sale in order to have the lease, and the latter was to avoid the former, what was the use of going through the work of creating a lease? Such an understanding is inconsistent to what they signed under seal at the time. The intention of the parties is to be kept in view (*The Orphan Society* agt. *Waterbury*, 8. *Daly's R.*, 35). None of the cases cited by appellant's counsel are relevant to the case at bar. The contract of lease was complete and entirely mutual. What was left to be determined, or done, to complete it? Nothing. The executory or special agreement was also complete. The plaintiff was not bound to buy the house until he gave the notice of his election to do so, as stated. This was the mutual agreement between the parties.

II. Whether the lease was or was not the whole contract between the parties, or whether it was an incomplete, inchoate paper, or not, was raised as a question of fact by the appellant before the jury, and upon a conflict of evidence was decided by the jury against him.

III. The question of law raised was tried and decided as a question of fact by the jury. The question tried by the jury was whether there was a valid contract of lease, but that question depended as to whether another paper was to be executed. Appellant contended two different papers to be signed, perfected and constituted the agreement. Respondent contended this was not true as matter of fact, and the jury decided for the respondent. So that it was decided that the lease and the special agreement in it was the whole agreement, and was not to be evidenced by any further paper. The law could not be against the actual fact. Until the election to buy, and until a sale of the property, the lease remained in existence and in full force and effect. In *Lazarus* agt. *Heilmann* (11 *Abb. N. C.*, 93; *also reported in* 2 *N. Y. Civil Pro. R.*, 204) the

Heilmann agt. Lazarus.

court of common pleas for the city and county of New York, equity term, VAN HOESEN, J., in an action for waste, held the special agreement in the lease a complete, perfect contract, and compelled specific performance of the same on a counter-claim for that purpose.

IV. The justice did not charge as excepted to, and the exception is therefore of no avail. What he did charge was in fact the truth. The lease is in form complete. It was not a question of law as to the interpretation of a contract, but whether the contract had been completed or not by the decision of a fact, about which the parties contended. Defendant had the affirmative of the issue of fact that he raised on the trial. He claimed the lease was inchoate and not complete, because the fact was, another paper was to be executed before this was so. The burden of proof was upon him to show it, and thus impeach the lease. Appellant took no exception to the submission to the jury of the question of fact whether another paper was to be executed or not. He himself submitted his side of this question to the jury.

V. As to the allowance. The value of the subject-matter involved to the respondent, the lease, was $700 for the first year and $1,000 for the second year — $1,700. Respondent had to pay this sum; it was the sum agreed between the parties, and it must, therefore, be taken as the value involved. The case was difficult and extraordinary, in view of the defense sprung upon the trial.

FINCH, J. — We do not discover in the lease under which plaintiff claims to obtain possession of the property in question the element of uncertainty upon which the defense is primarily founded. It purports to let the premises in dispute for the term of two years from the ensuing first day of May, at the yearly rent of $700 for the first year and $1,000 for the second, to be paid in equal monthly advance payments, and contains the ordinary and usual provisions for the protection of lessor and lessee. It has, however, a further provision,

looking to the purchase of the property by the lessee, which is claimed to be imperfect and incomplete as an agreement of sale, and to infect with its own uncertainty the entire contract. The stipulation thus criticised is in these words, viz. : " The party of the first part agrees to sell to the party of the second part, and the party of the second part agrees to buy from the party of the first part, the house and lot herein leased, for the sum of $8,000 lawful money of the United States as per special agreement signed in the same time with this lease ; a sale of the property voids the lease, and can be effected any time during the term of the lease upon two months' previous notice given to the party of the first part by the party of the second part of his intention to effect the sale." The operation of this provision is claimed to be rendered doubtful and uncertain by its reference to a " special agreement " contemplated to be concurrently executed. The argument at our bar developed a question of construction. The respondent contended that the " special agreement " referred to was not a separate and distinct contract, but the agreement for purchase and sale contained in the lease, and put stress upon the words " signed in " as well as the fact that the lease was drawn by the lessor himself, who was a German, somewhat awkward in the use of an unfamiliar language, and wholly inexperienced in the drawing of legal papers. The appellant, however, insists upon the more natural and obvious meaning, that the " special agreement " contemplated was one fixing the minor details of the contract of sale, and to be concurrently executed, so that the signing of the lease was merely provisional and conditional, and until the further instrument was executed no complete contract was made. But the lease as signed contained within itself, even as it respected the contract of sale, a complete and perfect agreement, if no reference had been made to a further settlement of details, or if such settlement and modification was waived. One agreed to buy and the other to sell. The price was fixed at $8,000. It was to be paid in lawful money of the United States, and in legal effect,

at the time of the consummation of the sale by the delivery of the deed, the time of conveyance and payment was fixed; it was to be during the continuance of the lease and upon two months' previous notice, but within those restrictions was at the option of the lessee. When made it avoided the lease. The agreement, therefore, in and of itself, had every element necessary to its completeness, and if at the time it was signed no further agreement was in any manner made or presented, claimed or insisted upon, the natural inference would be either that none was contemplated, because both parties understood the contract as respondent reads it, or that it was entirely waived, the parties resting upon the paper signed as a complete execution of their contract. Whether a contract was in fact executed, or only partially and incompletely executed, was therefore the question litigated, and to some extent was a question of fact. The paper actually signed was admissible, of course, for it tended to show the making of a complete and perfect contract, and was supplemented by the oath of the plaintiff that no other or further paper was executed at the same time, and no other was presented or shown to him. In this respect he was corroborated by two other witnesses present at the execution of the lease. At this point the defendant moved for a nonsuit, upon the ground that no completed contract had been executed and the plaintiff had not bound himself to buy. What we have said indicates that the motion was properly denied, for upon the facts it was competent for the jury to find that no further agreement was contemplated at the time of the execution of the lease. The defendant then gave rebutting evidence. He called the owner and lessor, who testified that a further paper specifying details and conditions of the contract of purchase was prepared and presented at the time of the execution of the lease; that plaintiff declined to sign it until he consulted a lawyer, and later refused entirely. If this was true the minds of the parties never met, and no completed contract was executed.

The evidence having closed, the court charged, as matter of law, that the agreement signed was of a character sufficient, if perfected, to be valid and effectual; but whether or not a complete and perfected agreement was in truth made was a question of fact for the jury.

Apparently the learned counsel for the defendant meant to except to the proposition of the law laid down by the court. If he had done so, the exception would have been unavailing, for it is certainly true that the instrument on its face contained every necessary element of a complete and perfect contract. But the exception was inaccurate. It was taken to so much of the charge "as states that the lease produced by the plaintiff is a complete and executed instrument, as appears upon its face." The learned judge nowhere spoke of it as "completed and executed." He described it as complete on its face and "signed," but whether executed as a complete and perfected contract was precisely the question submitted to the jury. In the progress of the charge the court stated to the jury the evidence given on the part of the defendant, tending to show that a separate and special agreement was prepared, presented for execution and refused, and said: "If but one of these papers was executed, and under this understanding as detailed by Mr. Ramsperger, the other, for any reason whatsoever, was left unexecuted, the two papers together making the agreement, there would have been no complete agreement between the parties as to these premises." The learned judge, however, further said, adverting to defendant's version of the facts: "It is needful for the defendant to establish this defense to your satisfaction, because the plaintiff produces a lease which is in form complete and signed by the parties." It is claimed that this proposition was erroneous and was reached by defendant's exception "to that part of the charge which says that the burden of proof is on the defendant to impeach the lease." Nothing is said in the charge as to the burden of proof or about impeaching the lease. The issue as to which the burden of proof was on the plaintiff was that of title, of right to the

possession of the land, and that the burden remained with him to the end. But the court was not speaking of that, nor of the burden of proof in connection with it. Attention was being directed to a conflict of evidence upon a question of fact arising under the main issue, and the language used can fairly be said to mean no more than that the plaintiff having made out a *prima facie* case the defendant must give some evidence to rebut it which the jury believe, or the *prima facie* case must prevail. In such cases it is sometimes, and perhaps inaccurately, said that the burden of proof is shifted.

In *Heineman* agt. *Hurd* (62 *N. Y.*, 455) it was observed that by such expression is only meant "that there is a necessity of evidence to answer the *prima facie* case or it will prevail." And the same thing was said in *Lamb* agt. *Chicago and Alton Railroad Company* (46 *N. Y.*, 279). Substantially that, and no more than that, was the evident meaning of the court in the present case, and we do not think it was intended or can be fairly construed to mean that the burden of the issue tendered by the complaint was upon the defendants. On the contrary, we think its fair construction is that the burden of proof was on the plaintiff; that he had borne it so far as to have made out a *prima facie* case, and that must prevail unless the defendant gave some evidence tending to rebut it which the jury could believe. The language of the charge might possibly bear a stronger construction; but even then it could not be justly said to have related to the burden of proof upon the issue of title. We do not think the jury were in any manner misled.

But the defendant also appeals from the order which gave to the plaintiff an extra allowance of seventy-five dollars. The subject-matter involved was the right of possession of the property for two years, subject to the rent reserved.

Whether that right had any money value was not shown. If the plaintiff succeeded he gained in money value only what the right of possession was worth over and above the rent which burdened it.

If he lost, that and that only was the measure of loss. No basis, therefore, existed for the computation of an extra allowance and the order should be reversed (*People* agt. *Alb. and Susq. R. R.*, 45 *N. Y.*, 499; *Coates* agt. *Goddard*, 2 *J. & S.*, 118). The order, therefore, cannot be sustained and must be reversed, but the judgment should be affirmed.

All concur, except TRACY, J., absent.

Judgment affirmed, with costs, and order for extra allowance reversed, without costs.