[No. 720.    August 23, 1898.]

## THE DENVER & RIO GRANDE RAILROAD COMPANY, Plaintiff in Error, v. UNITED STATES OF AMERICA, Defendant in Error.

### SYLLABUS BY THE COURT.

PUBLIC LANDS—CUTTING TIMBER—PRESUMPTION—BURDEN OF PROOF.— In actions in trover for alleged unlawful cutting of timber from the public domain, when the defendant proves that it had a lawful right, under a grant given by act of congress, to enter on public lands adjacent to its railroad line, and cut timber therefrom, for certain specified purposes, the presumption is that such cutting was done in accordance with the terms of the act, and not contrary thereto. The burden of proof is on the plaintiff to show that the grantee exceeded the terms of its grant, and not on the defendant to show that it had not.

*Error*, from a judgment for the United States, to the First Judicial District Court. Reversed and remanded.

.The facts are stated in the opinion of the court.

WOLCOTT & VAILE and E. L. BARTLETT for plaintiff in
error.

W. B. CHILDERS, United States district attorney, and
A. A. JONES, special assistant, for the United States.

The court properly instructed the jury that the burden of
proof was on defendant to show that it required the lumber
for its railroad line and uses as authorized by law, delivered
to it at the sawmill at Lumberton between the time the
mill was located there and the time it was removed from that
place.    Railroad Co. v. Lewis, 162 U. S. 376; State v. Riche-
son, 45 Mo. 578; U. S. v. Cook, 36 Fed. Rep. 897; U. S. v.
Murphy, Id. 378; Nelson v. U. S., 30 Id. 116.

MILLS, C. J.—This is an action in trover originally
brought before the district court of the First judicial district
by the United States to recover from the defendant, the
Denver & Rio Grande Railroad Company, the sum of ninety-
six thousand dollars, for the conversion of certain logs, lumber
and timber, which the plaintiff claimed were manufactured
out of trees theretofore standing and growing upon certain
public lands, situated in the county of Rio Arriba, in New
Mexico, in said First judicial district.    To the declaration, the
defendant pleaded not guilty, issue was joined and early in
January, 1897, the case came on for trial before a jury, and
after a trial lasting nearly two weeks, on the fifteenth day of
January, the jury found the defendant guilty and assessed the
damages against it at six thousand two hundred and eighty-two
dollars.    Immediately thereafter the defendant gave notice
of a motion for a new trial, and in arrest of judgment, and on
January 22 of the same year filed said motion, arguments on
which were had on the following day, and the motion was
denied, and judgment was duly entered.

To this judgment the defendant duly excepted, and after-
wards a bill of exceptions was signed, settled and sealed and the

case came to this court for hearing on error.   At an adjourned term of this court held in January, 1898, argument was had upon a motion to dismiss the writ of error on the ground that the assignment of error being all based upon alleged errors occurring during the trial, and none upon the record proper, that there was no bill of exceptions upon which the assignments could be based.   This motion the court overruled.   51 Pac. Rep. 679.

The facts may be briefly stated as follows:   The Denver & Rio Grande Railway Company, its successors and assigns, under and by virtue of an act of congress, approved June 8, 1872 (17 U. S. Stat. at Large, p. 339), and the act of March 1, 1877, amendatory thereof (19 U. S. Stat. at Large, p. 405) had the right to take from the public lands adjacent to its road, constructed prior to June 8, 1882, timber for the construction and repair of its railroad.   It had constructed by June 8, 1882, a fraction of a mile less than eleven hundred and thirty miles.   The Denver & Rio Grande Railroad Company, the plaintiff in error herein, is the successor and assignee of the Denver & Rio Grande Railway Company, and has succeeded to all of its rights and privileges under the aforesaid acts of congress.

The railroad company on March 14, 1893, appointed the New Mexico Lumber Company its agent, and authorized it to enter upon the public lands of the United States adjacent to, or in the neighborhood of its lines of railway constructed prior to June 8, 1892, and on its behalf and for it, to take therefrom such timber as might be necessary for the construction and repair of such portions of its line as were built prior to the last mentioned date.

In this agreement, which was accepted by the lumber company, in writing, the railroad company expressly set out that it did not authorize its agent to commit any waste upon the public lands or to cut, destroy or take away any timber not required for its purposes as aforesaid, nor to cut or remove any timber for it on the public lands, except, so far and to such extent as to amounts and quantity as it was specially

authorized to do. It is in evidence that when the railroad company needed lumber it always gave written orders therefor.

The proofs adduced in the trial in the lower court and the stipulations entered into between counsel, showed that from January, 1894, to August, 1895, the New Mexico Lumber Company had cut some seven million, five hundred thousand feet of lumber, board measure, principally from the lands described in the declaration, and had sawed the same at its mill at Lumberton and that of this lumber two million, one hundred and thirty thousand feet was delivered to the railroad company, for its use, upon its written orders; that the difference between these amounts or five million three hundred and seventy thousand feet was taken by the lumber company of its own volition. It is not contended that the railroad company is responsible therefor. The contention in this case, therefore, is only as to the two million, one hundred and thirty thousand feet admitted to have been delivered to the railroad company upon its written orders.

Numerous grounds of error are assigned, some of which were no doubt put into the record out of abundant caution. We do not consider it necessary for the proper termination of this case to take up these assignments seriatim.

. The railroad company had a right under acts of congress above referred to to cut such timber from the public lands adjacent to its line as was necessary for the repair of such portions of its road as was constructed prior to June 8, 1882, and having such right, it was lawful for it to go upon public lands adjacent to its road, and cut such timber as it might require for the repairs of such parts of its line as were constructed prior to June 8, 1882. The act of congress gave it such right. This right is not a mere license; it is more. It is a solemn grant given by special act of congress. · Having lawfully entered upon the public lands for the purpose of cutting such timber, the presumption attaches that neither the railroad company nor its agent exceeded the terms of the grant and the United States must prove (the same as any individual

PUBLIC lands: cutting timber; presumption.

would have to, if he had given a similar grant  to cut timber from lands privately owned by him)  that the grantee had exceeded its grant, and had cut timber in greater quantity or for other purposes than it had a right to do.

It is a presumption of law that one acting under a grant or license is presumed to act according to its terms and not in violation thereof.    The presumption is that the terms of such grant or license are not exceeded, and not that they have been. To hold otherwise would be to presume that the grantee or licensee had committed wrongful acts instead of presuming that he had acted lawfully.    In other words, the defendant would have to prove his innocence, instead of the plaintiff being obliged to prove him guilty.    This is not the policy of our law.    It is the wrong doctrine to prove, as was done in this case, that the railroad company had taken certain timber under a grant, and then cast the burden of proof on it to show that it had used such lumber lawfully.    The presumptions are that the company acted in good faith, and the burden of proof is upon the United States to show the contrary.

The sole issue presented is, has a wrongful conversion been committed?    The burden of proving this is on the United States as the company had the legal right to enter upon these lands and cut timber for certain purposes.    The United States introduced a sufficient amount of evidence to prove that the railroad company had, through its agent, cut timber in controversy from the lands described in the declaration; in fact to make out a prima facie case, but this does not shift the burden of proof.    Heineman v. Hurd, 62 N. Y. 448.

The averment which the plaintiff was bound to maintain was that the railroad company was guilty of an illegal conversion of timber cut.    In answer to this the defendant offered in evidence the act of congress.    By so doing it did not assume the burden of proof, which still rested upon the plaintiff but only sought to fix the status of the case.    Gilmore v. Wilbur, 18 Pick. 517.

Under the general issue, which was the plea in this case, the burden of proof was upon the plaintiff throughout as to every part of its case.    Berringer v. Lake Sup. Iron Co., 41 Mich. 305; Heineman v. Hurd, supra; Gilmore v. Wilbur, supra; Central Bridge Co. v. Butler, 2 Gray 130.

The principle on which we will determine this case, seems, indeed, to have already been decided by this court in the case of the United States v. Rutledge, 8 N. M. 385.    This was a case where the defend-

BURDEN of proof.

ant was convicted of the unlawful cutting of timber upon public land.    The evidence showed that the defendant had a mineral entry, and that he had cut timber therefrom.    At the trial the court charged the jury that the burden of proof was upon the defendant to show that the timber he had cut from his claim was to be used for agricultural, mining or domestic purposes.    In reversing this case the supreme court said:

"As to the former of these paragraphs, it is to be said that the learned judge was evidently proceeding upon the theory that the defense set up was of extrinsic matter, in the nature of a confession and avoidance, or, in other words, that it was an affirmative defense, and therefore to be proved by a preponderance of evidence.    It is readily seen that the facts which would constitute a license or authority to cut timber upon public lands should be established by a preponderance of proof, but in this case there was no question about defendant having shown that he had a mineral entry, and, indeed, the court instructed the jury that he did have.    A license to cut timber on this mineral entry for certain purposes having been shown the question of guilt or innocence rested not upon the fact of his cutting timber there, but whether or not the cutting was or not for the purposes allowed by law.    We think that if it is shown that defendant was lawfully on said premises and that he had a lawful right to cut timber for the purpose for which he was there, then there is a presumption that whatever cutting he did was in furtherance of such purpose. The rule the court gave the jury was tantamount to telling

them that, notwithstanding the defendant has established his right to cut timber on his mineral entry, yet he must also show by a preponderance of evidence that he has not violated the law by so doing. Apparently, the defendant is acting within the law when his mineral entry is admitted to exist, but the court says the act of cutting is presumed to be for other than mining purposes, and he must show by a preponderance of proof that it was not for other purposes. The defendant, though held by the court to be in position of one setting up an affirmative defense is required to establish a negative proposition. It may be conceded that when the prosecution showed that the timber was cut on public land there would be prima facie evidence of unlawful intent, and if the case rested there a verdict of guilty would be justified; but when the defendant showed that he was lawfully on said land, and has a right to cut timber for specified purposes, this prima facie showing of unlawful intent would be removed, and the burden would be on the prosecution to prove, or have proved, beyond a reasonable doubt the existence of such unlawful intent."

In the case at bar the court below, in its charge gave one instruction as follows:

"4. You are instructed that the defendant is bound to show that it required the two million, one hundred thirty thousand feet of lumber, board measure, for its railroad line and uses, as authorized by law, delivered to it by the said lumber company, at its sawmill at Lumberton, between the first day of January, 1894, and the month of August, 1895, or more correctly speaking, between the time the said sawmill was located at Lumberton, and the time it was removed from that place."

Among the requests of the defendant for instructions to be given to the jury, by the court is one numbered 14, number 13 of the assignment of errors, as follows:

"In this case it was admitted by the plaintiff, the United States, that the defendant, the Denver & Rio Grande Railroad Company, has the right, by act of congress, to take from public lands adjacent to that part of its railroad constructed

prior to June 8, 1882, timber required for the repair of that part of the railroad line of the defendant railroad company constructed prior to June 8, 1882. Under these circumstances, the burden is on the plaintiff to prove, by a preponderance of the evidence, that the timber actually taken from the specific public lands named in the declaration was used by the defendant railroad company for some purpose or at some place not permitted by the act of congress already mentioned. If, in your opinion, the plaintiff has failed to establish such improper use, by a preponderance of the evidence, then your verdict should be in favor of the defendant."

The refusal to give this instruction requested by the defendant railroad company, and the giving of instruction 4, supra, which is contrary to the established rules of law and evidence, as to the burden of proof being, as we believe, reversible error, it is not necessary for us to consider the other assignments, but the judgment below is reversed and the case remanded to the district court of the First judicial district with instructions to grant a new trial and proceed in accordance herewith.

Crumpacker, Leland, Parker and McFie, JJ., concur.