## Jackson Paper Manufacturing Co. v. Commercial National Bank.

1. CORPORATIONS—*Authority of the Superintendent to Indorse Checks Payable to His Company.*—The authority of the superintendent of a corporation to indorse a check payable to his company is a question of fact under the circumstances of each particular case to be determined by the jury, and if there is evidence fairly tending to support the verdict it should stand as returned unless the law of the case as announced by the instructions has been disregarded or is fatally

erroneous, or some instruction has been refused which was necessary to correctly place before the jury the law as applicable to the facts and circumstances of the case, or some evidence erroneously refused or admitted for the consideration of the jury.

2. SAME—*Authority of the Superintendent to Indorse Checks Payable to His Company Need Not Be Express.*—It is not necessary that the superintendent of a corporation should have express authority to indorse checks payable to his company; it is sufficient if shown that he was impliedly authorized to do so.

3. SAME—*Authority to Indorse Checks May Be Implied.*—Authority to indorse checks may be implied from the course of business and from repeated recognitions by the company of the superintendent's acts.

4. BURDEN OF PROOF.—*Not Shifted by the Making of a Prima Facie Case.*—Upon the introduction of evidence sufficient to establish a *prima facie* case the burden of proof is not necessarily shifted, but remains throughout the trial with the party who holds the affirmative of the issue.

Assumpsit, on a bank check. Appeal from the Superior Court of Cook County; the Hon. MARCUS KAVANAGH, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1900. Affirmed. Opinion filed December 24, 1901.

BOWEN W. SCHUMACHER, attorney for appellant; W. H. WILKINS, of counsel.

TENNEY, McCONNELL, COFFEEN & HARDING, attorneys for appellee.

MR. JUSTICE SHEPARD delivered the opinion of the court.

One Jackson was superintendent of the appellant company, located at Jackson, Michigan, and had been such about two years. His duties with reference to the company, were to superintend the mill, buy material, hire the men, look after the manufacture and sale of paper, and countersign checks, drawn by the treasurer of the company, for the payment of purchases he had made for the use of the mill, and at times to visit customers, adjust their accounts, make settlements with them and take from them checks or cash in payment.

In December, 1896, he visited Chicago on business for the appellant company, and while there adjusted an account of the company with the firm of J. Herz & Son, and received from them their check for the balance due, $325.65, in set-

tlement of the account. The check was drawn payable to the order of the Jackson Paper Manufacturing Company on the Commercial Bank of Chicago, and was dated December 18, 1896.

After Jackson received the check he took it to E. W. Copelin, also a customer of the paper company, and asked to have it cashed. He then indorsed the check, " Jackson Paper Manufacturing Company, C. A. Jackson, Supt.," and turned it over to Mr. Copelin, who, after having the check certified by the drawee bank, gave Jackson the currency for it. Copelin then indorsed the check over to the American Exchange National Bank, where he did his banking business and deposited it to his credit there, and the check went through the clearing house and was paid December 21, 1896, by the drawee, the appellee bank, and the amount thereof was charged to the account of the drawer, J. Herz & Son. Mr. Copelin testified that on the day he cashed the check, Jackson told him that he found it would be necessary to make a more extended trip than he anticipated when he left home and had not provided himself with sufficient money; that he was going to solicit business for the appellant, and asked to have the check cashed. The next that was heard of Jackson was that he had committed suicide in New Orleans, a few days or weeks later.

The question submitted to the jury was that of Jackson's authority to indorse the check, under the circumstances. Such was a question of fact, and the verdict in favor of appellee was the answer the jury gave to it. If there was evidence fairly tending to support the verdict it should stand as returned, unless the law of the case as announced by the instructions was disregarded or was fatally erroneous, or some instruction was refused which was needed to correctly place before the jury the law applicable to the facts and circumstances of the case, or some evidence was erroneously admitted or refused for the consideration of the jury.

It was not necessary that Jackson should have express authority to indorse the check; it was enough if shown that he was impliedly authorized so to do. Mechem on Agency,

Sec. 398.    He was, concededly, the superintendent and general manager of the paper company.    That of itself, gave no authority, express or implied, to Jackson to indorse checks; but the evidence goes far beyond the single fact that Jackson was superintendent of the company.

He was also authorized to visit customers and adjust their accounts, making allowances for discounts, commissions, etc., and to expend the company's money in making such trips, and impliedly, at least, to collect money found to be due to the company from its customers.    He had, also, on previous occasions collected moneys and checks from the company's customers and applied them to his own use, making proper return thereof and having them charged to his account on the books of the company, and there is nothing to show that such a course would not have been pursued by him in this case if he had lived.

In his capacity as superintendent he had active charge of the company's business, and all of it, except the matter of giving checks and indorsing the company's name on such paper as was made payable to the company.    Indeed, as to the giving of checks it seems that the countersigning of them by Jackson, as superintendent, was as much a part of the method pursued as the signing of them by the treasurer, and was an act the doing of which by Jackson, led Copelin, when he was in the company's office a month or so before the check in question was cashed, to believe he was signing checks at the time.    Copelin also had checks of his own, which he had sent to the company in payment of bills for goods, and which were payable to the company by name, returned to him, as paid vouchers, bearing the indorsement of the treasurer's name by Gale Jackson, an assistant and subordinate of C. A. Jackson, the superintendent.

In every other respect he, as superintendent, appears to have had the entire management of the business.    The treasurer and managing director was the only other officer of the company who attended to its affairs, and according to his own testimony he went to the office of the company very irregularly. - " Sometimes I would go there and spend all day, and then again not more than once a week, and

sometimes not more than once a month. I only went as occasion required." After describing what Jackson's duties were, as superintendent, the treasurer in testifying said: "When an account was considered in a dangerous condition Mr. Jackson would go to settle it. In that way he made some settlements and received some checks payable to the company."

It thus plainly appears that Jackson had authority to make the adjustment and settlement with the drawer of the check which he did, and to receive the check in question. Now, had he the authority to collect the check? If he had, then the authority to indorse it with the name of his company, to whom it was drawn payable, we think followed. The check was but a means of collection of the account, and its indorsement was something which necessarily resulted from the power to collect. Commercial National Bank v. Lincoln Fuel Company, 67 Ill. App. 166.

Daniel, in his work on Negotiable Instruments, Sec. 289, states with reference to proof of an agent's authority to make and indorse negotiable paper, as follows:

"Authority may be implied from the course of business and employment; from repeated recognitions by the principal of the agent's authority. The circumstances which give rise to the implication of authority are for the jury to consider; and the jury will be warranted in holding the principal liable, if they produce a strong and reasonable belief that authority existed."

And again, the same author at Sec. 290, says:

"The authority to bind the principal in a certain character on a negotiable instrument can not be construed as an authority to make the principal a party in any other character. * * * But under certain circumstances, authority to bind the principal in one form, might be evidence throwing light on the question of authority to bind him in another. 'It may be admitted,' said Tindall, C. J., in a case quoted elsewhere in the text, 'that an authority to draw does not import in itself an authority to indorse bills; but still, the evidence of such authority to draw is not to be withheld from the jury where they are to determine upon the whole of the evidence whether an authority to indorse existed or not.'"

So, here, the wide authority given to Jackson in the management and carrying on of the business of the company, and all the acts done by him in pursuance of such authority, were proper evidence for the jury to consider in arriving at a correct conclusion as to whether he was authorized to indorse the check in question and convert it into money.

Probably no single act done by Jackson by authority of the company, and with its knowledge, could be held to be sufficient to authorize the act here in question, but taking them all together, the jury were not so clearly wrong in concluding that he had authority, as to justify us in disturbing their verdict.

We think there was no error committed by the rulings of the court on the admission of evidence. The question before the court was whether or not the indorsement by Jackson was sufficient to transfer the title to the check to Copelin & Company, who cashed it, and the rulings of the court were in reference to testimony affecting that question, and were proper. If Copelin & Company got a good title to the check their transfer of it by their indorsement, carried with it a good title to their indorsee, even though such indorsee might have had express knowledge that Jackson had no actual authority to make the indorsement.

" As soon as the paper comes into the hands of a holder unaffected by any defect, its character as a negotiable security is established, and the power of transferring it to others with the same immunity which attaches in his hands, is incident to his legal right and necessary to sustain the character and value of the instrument as property, and to protect the *bona fide* holder in its enjoyment. To prohibit him from selling as good a right and title as he himself has, would destroy the very object for which they are secured to him—would, indeed, be paradoxical. And it has been justly said that this doctrine ' is indispensable to the security and circulation of negotiable instruments, and is founded on the most comprehensive and liberal principles of public policy.' " 1 Daniel on Negotiable Instruments, Sec. 803.

The instructions that are complained of, concerning where the burden of proof lay, were, we think, proper. They cast the burden upon the party asserting the affirmative of the

issue, that is, upon him who was bound to introduce evidence on the issue before he could be entitled to a verdict. Smith v. Grant, 30 Ill. App. 150.

In this case, the affirmative of the proposition that the check indorsed by the superintendent of the company was unauthorizedly indorsed, was first asserted and was assumed and held by the appellant, and the burden of proof was upon it. It not infrequently occurs that to establish the affirmative of the issue involves the proof of negative allegations. Best's Principles of Evidence, Sec. 271; Smith v. Grant, *supra*. Upon the introduction of evidence sufficient to establish a *prima facie* case, the burden of proof is not necessarily thereby shifted, but the burden of maintaining the affirmative of the issue by a preponderance of evidence, remains throughout the trial, upon him who holds the affirmative of the issue. Fidelity and Casualty Company v. Weise, 182 Ill. 496; Heinemann v. Heard, 62 N. Y. 448; Farmers' Loan and Trust Co. v. Siefke, 144 N. Y. 354; 5th Am. & Eng. Ency. of Law, pp. 23, 29–31; Simpson v. Davis, 119 Mass. 269.

The evidence being all submitted, both that for and that against the claim of authority, the burden of proof on the whole case on that question was upon the party who first asserted the want of authority as an essential part of his case.

The remaining claimed errors in the instructions seem to have been sufficiently answered in what has been already said. We are not unmindful of the authorities cited by the appellant, but must content ourselves by saying that they appear to contain elements not included in the case under consideration, or omit some essential ones that are in the case before us. The question is one of much collateral importance and we will, if requested, certify it to the Supreme Court.

Upon the record before us the appellee ought not to be required to pay the check twice, and there being no substantial error pointed out, we will affirm the judgment, and it is so ordered. Affirmed.