Adelaide L. Post et al., Appellants, *v.* Francis O. Mason et al., Executors, etc., Respondents.

Where a will executed by one having full testamentary capacity, and duly admitted to probate, contained a legacy to the draughtsman, an attorney, who, at the time of the execution of the will, was, and for a long time previous had been, the counsel of the testator, *held*, that this alone did not raise a presumption, in aid of one seeking to overthrow the will, that the influence of the attorney was unduly exercised, nor did it, in the absence of evidence, warrant a presumption that the intention of the testator was improperly, much less fraudulently, controlled; that it was for the plaintiff, therefore, in an action brought to set aside the will to give some other evidence tending to show fraud or undue influence.

A misdirection by the court upon the question of the burden of proof, upon the trial by jury of specific questions of fact in such an action, may, "in the discretion of the court which reviews it, be disregarded, if it is of opinion, that substantial justice does not require that a new trial should be granted." (Code of Civil Procedure, § 1003.)

A court of equity has no jurisdiction to set aside a will of personal prop-

erty, which has been duly admitted to probate, because of fraud or undue influence; the probate is conclusive.    (2 R. S. 61, § 29.)

Nor can executors, as to a gift to them in a will so admitted to probate, be charged by a court of equity, as trustees of the next of kin, on the ground that the gift was obtained by fraud.

*Segrave* v. *Kirwan*  (1 Beatty, 157), distinguished

(Argued February 1, 1883; decided March 6, 1883.)

Appeal from judgment of the General Term of the Supreme Court, in the fourth judicial department, entered upon an order made December 30, 1881, which affirmed a judgment in favor of defendants, entered upon a decision of the court on trial at Special Term, and affirmed an order denying a motion for a new trial. (Reported below, 26 Hun, 187.)

The nature of the action and the material facts are stated in the opinion.

*William F. Cogswell* for appellants. An attorney claiming under a transaction with his client is bound to show that his client had independent advice as to the effect of his transaction. ( *Whitehead* v. *Kennedy*, 69 N. Y. 462, 466 ; *Ford* v. *Harrington*, 16 id. 285 ; *Nesbit* v. *Lockman*, 34 id. 167 ; *Berrien* v. *McLane*, 1 Hoff. Ch. 421–428 ; *Mason* v. *Ring*, 3 Abb. Dec. 210.)    This rule is applicable with quite as much force to testamentary transactions as to transactions between parties directly.    ( *Newsen* v. *Newsen*, 2 Keyes, 229 ; *Morris* v. *Stokes*, 24 Ga. 552–575 ; *Barry* v. *Battin*, 1 Curteis, 637 ; *Wyatt* v. *Ingraham*, 3 Hagg. Eccl. 466; 5 Eng. Eccl. 183 ; *Coffin* v. *Coffin*, 23 N. Y. 9.)   A court of equity, in case any gift in a will was obtained by fraud, actual or constructive, and especially where the solicitor of the testator prepares the will, and makes himself residuary legatee, will declare the party obtaining such gift or legacy, a trustee for the next of kin. (*Marriot* v. *Marriot*, 1 Strange, 666, 673 ; *Barnesley* v. *Powel*, 1 Ves. Sr. 284, 285 ; *Hindson* v. *Weatherill*, 1 S. & G. 614 ; *Seagrave* v. *Kirwan*, 1 Beatty, 157 ; *Gibson* v. *Jeyes*, 6 Ves. 266 ; *Bulkley* v. *Milford*, 2 C. & F. 102 ; *Gingell* v. *Horne*,

9 Sim. 539; 5 De Gex, M. & G. 301; Mitford's Ch. Pl. 257; Fonbl. Eq. 68 [4th Am. ed. 76], note *u;* *Maundy* v. *Maundy*, 1 Rep. in Ch. 23; *Well* v. *Thornagh*, Prec. Ch. 123; *Goss* v. *Tracy*, 1 P. Wms. 287; 2 Vern. 700; *Roberts* v. *Wynne*, 1 Rep. in Ch. 236; *Archer* v. *Moss*, 2 Vern. 8; *Herbert* v. *Lownes*, 1 Rep. in Ch. 22; *Thynn* v. *Thynn*, 1 Vern. 296; *Devenish* v. *Barnes*, Prec. Ch. 3; *Barnesley* v. *Powel*, 1 Ves. Sr. 287; 2 Dessaus. Ch. 356.)

*Geo. B. Bradley* for respondents. An error in the admission or exclusion of evidence, or in any other ruling or direction of the judge upon the trial, may, in the discretion of the court which reviews it, be disregarded, if the court is of opinion that substantial justice does not require that a new trial should be granted. (Code of Civil Pro., § 1003; *Lansing* v. *Russell*, 2 Comst. 563; *Forrest* v. *Forrest*, 25 N. Y. 501, 510; *Clapp* v. *Fullerton*, 34 id. 190, 195–196; *Foote* v. *Beecher*, 78 id. 157, 158; *Tomlinson* v. *Miller*, 3 Keyes, 520; *Apthorp* v. *Comstock*, 2 Paige, 487.) The practice in respect to disposition of feigned issues so far as applicable still prevails under the provisions of the Code. (*Vermelia* v. *Palmer*, 52 N. Y. 471, 474; *Snell* v. *Loucks*, 12 Barb. 185, 387–9; *Cole* v. *Tifft*, 47 N. Y. 121; *Thurber* v. *Chambers*, 4 Hun, 727; *Hegeman* v. *Cantrell*, 50 How. 189; *Hatch* v. *Peugnet*, 64 Barb. 194–195.) The motion for a new trial in the court below was addressed to the discretion of the court there. (*Lansing* v. *Russell*, 2 Comst. 563; *Cole* v. *Tifft*, 47 N. Y. 121; *Forrest* v. *Forrest*, 25 id. 501, 510; *Hegeman* v. *Cantrell*, 8 J. & S. 386; *Clayton* v. *Yarrington*, 33 Barb. 144; *Clark* v. *Brooks*, 2 Abb. Ct. of App. Dec. 558–9.) The burden was on the plaintiffs to show in the first instance undue influence, either by direct proof or by circumstances from which an inference of it might arise. (*Tyler* v. *Gardner*, 35 N. Y. 559, 594.) There is no rigorous rule of law that presumes undue influence on the part of the draughtsman of a will because he is a beneficiary by it, although he has also been the legal adviser of the testator. (*Coffin* v. *Coffin*, 23 N. Y. 9, 13; *Tyler* v.

*Gardner*, 35 id. 559 ; *Kinne* v. *Johnson*, 60 Barb. 70, 79 ; *Mark* v. *McGlynn*, 88 N. Y. 371 ; *Buttin* v. *Barry*, 1 Curteis' Ecc. 637 ; 6 Eng. Ecc. 417 ; approved in 23 N. Y. 13 ; *Paine* v. *Hall*, 18 Ves. 475 ; *Hudson* v. *Weatherill*, 5 De Gex, M. & G. 301, 311, 313 ; *Barry* v. *Butlin*, 2 Moore's Privy Council, 480 ; *Parfitt* v. *Lawless*, 2 Probate and Divorce, 462 ; *S. C.*, 4 Eng. Rep. [Moak] 687 ; *Russell* v. *Russell's Adm'rs*, 3 Houst. [Del.] 103 ; *Nexsen* v. *Nexsen*, 3 Abb. Ct. of App. Dec. 360, 364 ; *Cudney* v. *Cudney*, 68 N. Y. 148, 152 ; *Children's Aid Soc.* v. *Loveridge*, 70 id. 394.) The decree of the surrogate, admitting the will to probate, is conclusive evidence of the validity of the will, and cannot be attacked in that respect in this court. (2 R. S. 61, § 29 ; *Vanderpoel* v. *Van Valkenburgh*, 2 Seld. 190 ; *Muer* v. *Trustees, etc.*, 3 Barb. Ch. 477 ; *Bogardus* v. *Clark*, 4 Paige, 623, 625–6 ; *Colton* v. *Ross*, 2 id. 396 ; *Burger* v. *Hill*, 1 Bradf. 371–3 ; *Jourden* v. *Mier*, 31 Mo. 40 ; *Crippen* v. *Dexter*, 13 Gray, 330 ; *Broderick's Will Case*, 21 Wall. 503 ; 3 Redfield on Wills, 58–63 ; *In re Kellum*, 50 N. Y. 298.) That probate is conclusive evidence of validity of the will in respect to the clause in question. (2 R. S. 61, § 29 ; *Vanderpoel* v. *Van Valkenburgh*, 2 Seld. 190 ; *In re Kellum*, 50 N. Y. 299 ; *Colton* v. *Ross*, 3 Paige, 396, 398 ; *Booth* v. *Ketchum*, 7 Hun, 255, 257.) The question of validity of wills of personal property is not the subject of jurisdiction of a court of equity. The probate court has exclusive jurisdiction of that subject. (1 Story's Eq. Jur., § 184 ; *Meluish* v. *Milton*, 3 Ch. & Div. 27 ; *S. C.*, 17 Eng. Rep. [Moak] 771 ; *Allen* v. *McPherson*, 1 H. of L. Cas. 191 ; affirming, 1 Phillips' Ch. 133 ; *Herrick* v. *Brunsby*, 7 Brown's P. C. 437 ; *Ex parte Fearon*, 5 Ves. 647 ; *Colton* v. *Ross*, 2 Paige, 396, 398 ; *Clark* v. *Fisher*, 1 id. 171, 176 ; *Heyer* v. *Berger*, 1 Hoffm. 10, 11 ; *Booth* v. *Ketchum*, 7 Hun, 255, 257 ; *Burger* v. *Hill*, 1 Bradf. 371–2 ; *Broderick's Will Case*, 21 Wall. 503 ; *California* v. *Glynn*, 20 Cal. 233, 266 ; *Gaines* v. *Chew*, 2 How. [U. S.] 645 ; 3 Redfield on Wills, 58–60.) It is not of fraud on the testator, but of fraud after his death in procuring decree of probate, etc., that a court

of equity may entertain jurisdiction. (*Meadows* v. *Duchess of Kingston*, Ambl. 756, 762; *Barnsley* v. *Powell*, 1 Ves. Sr. 284; *Allen* v. *McPherson*, 1 Phillips' Ch. 133; 1 H. of L. Cas. 191; *Broderick's Will*, 21 Wall. 511; *Chapman* v. *Montgomery*, 63 N. Y. 231; *Given* v. *Hilton*, 95 U. S. 591.)

DANFORTH, J.   John Post made his will on the 13th day of September, 1874, and thereby, after giving to each child $40,000, to his wife the use for life of $40,000, and the homestead, with remainder to his children, $20,000 to the Ontario Orphan Asylum, to a nephew $3,000, smaller sums to his brother, to a clergyman and others, to his wife's mother for life a certain house and lot, with remainder to his heirs, provided for the improvement of his father's burial place and the erection of certain monuments, and then appointed Alonzo Wynkoop and Bradley Wynkoop, both his cousins, and Francis O. Mason, his executors and trustees for certain purposes, and gave to them in equal shares the remainder of his estate, amounting, as it now appears, to $17,513.66 personal property. He died on the 28th of September, 1874, leaving an estate of the value of about $200,000, and on the 24th of October, 1874, probate of the will was duly granted by the surrogate of Ontario county. This action was commenced in May, 1878, by the plaintiffs, as the widow, heirs, and next of kin of the testator, against the defendants, as executors and residuary legatees, praying that the probate of the alleged will be vacated, that the instrument be declared not to be the last will and testament of John Post, or, failing in these respects, that the plaintiffs be declared to be the owners of the residuary estate, and the defendants adjudged to hold the same as trustees for them.

The defendants, by answer, put in issue the case made by the complaint, and questions framed thereon were, on submission to the jury, answered by them in favor of the defendants.   The plaintiffs then applied to the Special Term for a new trial upon exceptions taken to the charge of the trial judge, and his refusal to charge as requested by their counsel.   This was denied.   The court, thereupon, approved the verdict, and after

findings of fact and law, on all points adversely to the plaintiffs' case, ordered judgment, dismissing the complaint.

We find no error in that decision. *First,* as to the charge; so far as material to the proposition argued by counsel, the complaint alleged that Mason was a lawyer, and at the death of the testator, and for one or more years before that time, his friend and confidential attorney and counselor; that he wrote the will in question, and taking advantage of that relation, " improperly and illegally, if not fraudulently, induced " the testator to execute it in ignorance of its contents and effect; that the instrument was never read over to him, and he was never fully informed of its contents; that its probate was fraudulently procured at a time when the children were under the age of twenty-one years, and the widow uninformed of its contents. The answer of the defendants puts in issue every allegation tending to exhibit fraud or contrivance either as concerned the will or its probate, and in the most satisfactory manner details the various consultations which led to the will, and the intelligent instructions given by the testator for its preparation. Omitting immaterial questions, those framed for the jury were: *Fourth,* Was John Post, at the time he made and executed the will, of sound and disposing mind and memory, and competent to make and execute it? *Fifth,* Was it read over by or to him at the time of, or before its execution, and did he understand it and all its provisions? *Sixth,* Was its execution procured by undue influence? *Seventh,* Was the probate fraudulently obtained? *Eighth,* Was the plaintiff, Adelaide, informed of the contents of the will, and if so, when? *Ninth,* Did either of the defendants intentionally prevent either of the plaintiffs from becoming informed of the contents of the will? Upon the trial of these questions before the jury, it was conceded that the signature to the will was that of the testator; that the statutory formalities relating to its execution were complied with, and that it was admitted to probate at the time above stated. Witnesses were examined by the plaintiffs to establish, on their part, the questions in issue. They were answered by the defendants. In his charge to the jury the

learned judge dwelt upon each proposition involved, in a manner satisfactory to the plaintiffs, except as I shall hereafter state. Upon the question of undue influence he said, upon the relation of client and counsel, "The law fastens a peculiar confidence," and all that is necessary to make the influence of the latter undue is that "they should use the confidence reposed in them, unfairly and dishonestly to operate as a moral coercion upon the testator, and thus induce him to do what he otherwise would not have done." "The law," he said, "treats the exercising of this unfair influence as a fraud, but the law does not presume that a fraud has been committed in this or any other case. If a man clear in his mind, and competent to understand things, makes his will, the mere fact that he gives a legacy to the counsel who draws it does not invalidate the will at all." "It has this effect, however, if there is any evidence produced, tending to establish the fact that there was this undue influence, the law looks with more jealousy upon it than in other cases, it requires less evidence to find undue influence, when the will gives a legacy to the counsel, than if it was between persons not holding the relation I have adverted to." He added, "It is incumbent upon the plaintiffs in this case to prove some circumstances of suspicion, some evidence of an unfair exercise of the influence which Mr. Mason had over the testator, and if they have furnished such evidence it is incumbent upon the defendants to show you some evidence that no undue influence was exercised." To this clause the plaintiffs' counsel excepted, and asked the court to charge: "That this will having been written by Mr. Mason, who is a legatee, and is shown to have been for years before the will was made the legal adviser of Mr. Post, the same is presumed to be fraudulent; that the law itself, without any evidence at all, presumes that it was obtained by fraud ; that the presumption was against the will until it was overborne by satisfactory evidence." The court declined, and the plaintiff excepted. These exceptions are to be considered together, and they present the question whether a will executed by one having full testamentary capacity is, as matter of law, to be deemed fraudulent for

the simple reason that it contains a provision in favor of the draughtsman who was and had been the counsel of the testator. This is apparent when we read the charge and the request together. The court said : " If a man clear in his mind, and competent to understand things, makes his will, the mere fact that he gives a legacy to the counsel who draws it does not invalidate the will," and on the other hand, the appellant says : " The law itself, without any evidence at all, presumes it was obtained by fraud."

In *Hindson* v. *Weatherill* (5 De Gex, M. & G. 301), there is a case somewhat similar in its facts, and as viewed by the court, presenting the same question. The plaintiff succeeded before the vice-chancellor, on the ground that a solicitor of a testator, to whom the testator had made gifts, was a trustee of those gifts for the testator's heir at law and next of kin, but upon appeal the court thought otherwise, and deemed it unnecessary to say how the matter would have stood if undue influence or any unfair dealing had been established against him, for no such thing was done. The solicitor, they say, " prepared his client's will, containing dispositions in his own favor," adding, " there begins and ends the case as I view it. But a case so beginning and so ending does not take away the right, either legally or equitably, of a solicitor to be, for his own benefit, a devisee or legatee." This touches the very point as presented to the trial judge, and to the same effect are *Coffin* v. *Coffin* (23 N. Y. 9), and *Newsen* v. *Newsen* (2 Keyes, 229). The proposition of the plaintiff excluded every circumstance but the occupation of the legatee, Mason, and his relation to the testator and the will. If acceded to it would have taken from the jury even the contents of that instrument, forbidden them to inquire whether the testator himself knew its provisions, or to consider the amount of the legacy, its proportion to the whole body of the estate, its relation to bequests to other parties, and those persons who were the natural objects of the testator's bounty, and other circumstances which had been detailed in evidence. I do not think it necessary to inquire whether such rule might apply to a controversy between an

attorney and his client, where the former was seeking to enforce an obligation against the latter, or to an issue made upon the probate of a will under which the attorney was the principal beneficiary. There is certainly no rule of law which says an attorney shall not buy of, or contract with his client; there is only the doctrine that if a transaction of that kind is challenged in proper time, a court of equity will examine into it, and throw upon the attorney the onus of proving that the bargain is, generally speaking, as good as any that could have been obtained from any other purchaser, or in other words, that the bargain was a fair one. Then as to testamentary dispositions, as one does not, by becoming an attorney, lose the capacity to contract, neither is he thereby rendered incapable of taking as legatee, even under a will drawn by himself. That circumstance, if probate was opposed, might in some cases require something more than the usual formal proof of a due execution of the instrument, not because fraud was presumed, but because it might be rendered more probable than in cases where the directions of the testator followed the lines of relationship. *Coffin* v. *Coffin* and *Newsen* v. *Newsen* (*supra*), go no further. In the first, the fact that the draughtsman of the will was appointed executor and legatee was said to be suspicious only in connection with other circumstances indicative of fraud or undue influence, and in the other, although from an estate of $15,000, the draughtsman of the will, who was also the testator's agent, was appointed to receive all but $3,000, and so became the principal beneficiary under it, the court, citing *Coffin* v. *Coffin* (*supra*), held the same way. Both cases came up on appeal from surrogates' decisions on proceedings for probate, and require from the proponent in such a case testimony of a clear and satisfactory character. In *Coffin* v. *Coffin*, the court sum up the matter in the language of Baron Parke, in *Barry* v. *Butlin* (1 Curteis' Ecc. 637), and declare that "all that can be truly said is, that if a person, whether an attorney or not, prepares a will with a legacy to himself, it is at most, a suspicious circumstance, of more or less weight according to the facts of each particular case, in some of no

weight at all   *   *   *   *   *   *   *   varying according to circumstances, for instance the *quantum* of the legacy, the proportion it bears to the property disposed of, and numerous other contingencies."

The relation of attorney and draughtsman no doubt gave in the case before us the opportunity for influence, and self-interest might supply a motive to unduly exert it, but its exercise cannot be presumed in aid of those who seek to overthrow a will already established by the judgment of a competent tribunal, rendered in proceedings to which the plaintiffs were themselves parties, nor in the absence of evidence, warrant a presumption that the intention of the testator was improperly, much less fraudulently controlled. Such indeed seems to have been the theory on which the action was brought, for the complaint not only alleges the confidential relation between Mason and the testator, but avers weakness and inability on his part, ignorance of the contents of the will, and advantage taken of these circumstances by the attorney to procure a bequest for his own benefit. In view, therefore, of the verdict of the jury and the findings of the court, we might dismiss the case. They have not only declared that the testator was of sound and disposing mind, competent to make a will and under no restraint or undue influence, but that before execution the will was read and its provisions understood by him, and also that fraud was not practiced upon the testator nor upon the plaintiffs, to obtain probate, and have thus taken away every ground of relief, even if the Supreme Court had power to grant it. A somewhat more general question has, however, been argued for the appellants. The learned counsel insists that " the burden of proof is all there is of this controversy," and as the judge charged the jury that upon all the questions presented to them, " the plaintiffs held the affirmative," and again, that " the burden of proof is upon the plaintiffs to establish, by evidence, every allegation of fraud, and in the absence of such evidence, the issue must be found in favor of the defendants," there was error. Several propositions were thus involved. The questions submitted to the jury related severally to the condition of mind of the tes-

tator, influence exerted upon him, whether probate was obtained by fraud, whether Mrs. Post learned the contents of the will within a given time, and whether either, and if either, which of the defendants prevented her from so doing. Upon some of these there could be no doubt whatever as to the burden of proof. The plaintiff's moving to set aside the will and its probate must do something more than call the defendants into court, and so they thought at the trial. For they opened the case to the jury, and upon every question took the affirmative, giving such evidence as they could. Even assuming, therefore, that the exceptions were pointed enough to call the mind of the judge to any particular error, we think his instructions were right. But if otherwise, it would not follow that our decision should go for the appellants. Applications for new trials of questions submitted by a court of equity are governed by different principles from those which prevail on similar applications in a court of law. The object of the trial is attained, when the court is satisfied that justice has been done, and in such a case a new trial will not be granted, even for misdirection to the jury (*Head* v. *Head*, 1 Turner & Russell, 138), unless the error was vital or important. (*Vermilyea* v. *Palmer*, 52 N. Y. 471.) There are many cases to the same effect, but in this State, the rule is now statutory, and any error in the ruling or direction of the judge upon the trial may, in the discretion of the court which reviews it, be disregarded, if it " is of opinion that substantial justice does not require that a new trial should be granted." (Code of Civil Procedure, § 1003.) Upon this point neither the judge at Special Term nor the judges of General Term have entertained a doubt. Neither can we. Upon the question of fraud or undue influence, there is no evidence. The plaintiff's case stands, if at all, upon the single fact that a lawyer, the draughtsman of the will, was one of three residuary legatees, and thus receives a benefit. The proof is abundant that on the part of the testator there was adequate capacity, testamentary intention, and a due execution of the will, with full knowledge of its contents. This is enough. The record fur-

nishes no reason for defeating the plain wishes of the testator. Aside from these considerations, however, it is apparent that so far as any question here is concerned, the will is to be regarded as one relating to personal property only, and we are of opinion that its probate by the surrogate must be deemed conclusive. As to this the statute is explicit. (2 R. S., tit. 1, part 2, chap. 6, art. 2, § 29, p. 61; *Vanderpoel* v. *Van Valkenburgh*, 6 N. Y. 190; *In the Matter of Proving the Will of Kellum*, 50 id. 298.)

It is, however, urged as ground for the interference of a court of equity, notwithstanding probate of the will, that the executors may, as to the gift to them, be charged as trustees for the next of kin, if that gift was obtained by fraud, actual or constructive. Although the foundation for this contention is taken away by the decision of the other points, something should be said as to the proposition itself. Authority for it is not gathered from the decisions of the courts of this State, nor are we informed how it can stand in face of the statute (*supra*) which makes such probate conclusive. The whole, and each part of the will was before the surrogate, and allegations attributing any portion of it or any of its provisions to fraudulent practices, were then competent. They were made or might have been made, and in either event were embraced in his decision. If established, the will, or so much of it as was affected by the fraud, would have been rejected, and the property now claimed would have found its way by force of the statute of distributions to those entitled to it. We are, however, referred by the appellants' counsel to cases from the English courts, in support of his position. We think they are insufficient. Most of them (*Marriot* v. *Marriot*, 1 Str. 666; *Segrave* v. *Kirwan*, 1 Beatty, 157; *Bulkley* v. *Wilford*, 2 Clark & Fin. 102; *Barnesly* v. *Powel*, 1 Ves. Sen. 287) are cited and commented on in *Allen* v. *McPherson* (1 House of Lords Cases, 191), where after probate of a will and codicils in the Ecclesiastical Court, a bill was filed by one R. A. in Chancery, stating that by the will and codicils the testator gave him large bequests which he revoked by the final codicil, and alleged that the testator had

executed the last codicil when his faculties were impaired by age and disease, and under undue influence of the residuary legatee, and false representations respecting R. A.'s character, and moreover that he had not been permitted in the Ecclesiastical Court to take any objections to that codicil, except such as affected the validity of the whole instrument, and prayed that the executor or residuary legatee might be declared trustees or trustee to the amount of the revoked bequest. Upon demurrer, the court, with these and other cases before it, held that the Court of Chancery had no jurisdiction in the matter, and this was upon the ground that the Ecclesiastical Court had jurisdiction and might have refused probate, citing various instances where those courts had so applied the doctrine, and as to cases in which a court of equity had declared a legatee or executor to be a trustee for other persons, show that they presented questions of construction, or were cases in which the party had been named a trustee, or had engaged to take as such, or in which the Court of Probate could afford no adequate remedy, and were not cases of fraud. This decision was made in 1847, and in a much later case (*Meluish* v. *Milton*, L. R., 3 Ch. Div. 27, decided in 1876) it was followed by the Court of Chancery, where the heir-at-law and next of kin sought to have the executrix, who was also legatee, declared a trustee of the property for him. The relief sought was denied upon the ground that as the Court of Chancery could not set aside probate of a will of personal property, it could not make a legatee trustee for another person, on the ground of fraud, as that would be doing indirectly what the law will not allow to be done directly, and the court held that the exclusive jurisdiction of the Court of Probate in such cases is supported by convenience as well as by authority. So there are English cases where as the law stood, if a testator did not dispose of his residuary estate, the executors took a beneficial interest in it unless a contrary intention was expressed, and a court of equity was astute to find a trust for the heir or next of kin. *Segrave* v. *Kirwan* (1 Beatty, 157), so largely relied on by the appellants, was one of those cases. It was not there the in-

tention of the testator to give the draughtsman any.thing more than the office of executor, but no residuary legatee was named, and he insisted that he was entitled to the residue of the personal estate, and so the law was. But it appeared that at the time he drew the will, he was not — nor was the testator — aware that under the dispositions and omissions of the will, he would be entitled to the residue; and the court charged the attorney as trustee for the next of kin, upon the ground that he should be deemed to have known the law, and having failed to instruct the testator in regard to it, should reap no advantage from his actual ignorance. But even in England the necessity for this interference was removed by statute (11 Geo. 4, and 1 Will. 4, chap. 40; Statutes of Great Britain and Ireland, vol. 12, part 1, p. 144), and we are cited to no case in this State where a court of equity has exercised such jurisdiction as the plaintiffs now invoke.

Upon all grounds, therefore, we think the judgment of the Supreme Court should be affirmed, with costs.

All concur.

Judgment affirmed.