# THE NEW YORK AND BROOKLYN FERRY COMPANY,

RESPONDENT, *v.* JOHN H. MOORE AND OTHERS, APPELLANTS.

*Evidence — the fact that a toll gatherer unaccountably grows rich during the time of his employment does not impose upon him the burden of proving himself innocent of embezzlement — the burden of proving the allegation of the complaint rests upon the plaintiff.*

In an action by a ferry company to recover money alleged to have been embezzled from it by the defendant while acting as its gate-keeper and toll gatherer, the burden of proving that the money was taken and kept by the defendant rests upon the plaintiff. There is nothing in the confidential relation existing between the parties which imposes upon the defendant the duty of proving that he has faithfully accounted for all the moneys he has received.

The fact that, although seemingly very poor when he entered into and while he continued in the employment of the plaintiff, he accumulated during that time, and still has a large amount of money and property, does not impose upon him the duty of disclosing the sources from which it was derived.

APPEAL from a judgment in favor of the plaintiff, entered upon the trial of this action by the court without a jury.

*James M. Smith*, for the appellants.

*William C. De Witt* and *Joseph A. Burr, Jr.*, for the respondent.

DYKMAN, J.:

The chief object of this action is to recover money claimed to have been embezzled from the plaintiff by the defendant, John H. Moore; the relief demanded against the other defendants being subsiduary to the main purpose.

The action is brought to compel the principal defendant to account to the plaintiff, as its trustee for the money he had received, and to pay over such amounts thereof as he has appropriated to his own use, and to impress the property purchased by him with such funds, with a trust in its behalf. Two actions were commenced originally, but they were tried and are to be treated as one. John H. Moore entered the employ of the ferry company in 1866, as night watchman. Soon after he was made bridgeman, and in 1868 or 1869 became gateman or toll-gatherer of the team-drivers. Then in December, 1870, he became ferry-master, to receive the fares from the foot passengers passing through the ferry gates, and continued in that position until January, 1883. The allegation against the defendant is that at divers times during his employment he received from a great number of persons large sums of money, rising to more than two hundred thousand dollars in amount, in payment of tolls which belonged to the plaintiff; that the plaintiff is unable to state the exact amount so received, for the reason that the defendant falsely, fraudulently and willfully so kept his accounts, and altered the same, that the various items making up the amount do not all appear therein; that the defendant has falsely, fraudulently and willfully retained and converted to his own use a large portion of these moneys, and omitted to make any record or entry thereof in his accounts; that the defendant has failed and refused to account to the plaintiff respecting such moneys, and refused to pay the same, and has deposited the same in different banks, and used the same in the purchase of real property in his own name.

The allegations material to a recovery are all denied, and the duty

to substantiate them is devolved on the plaintiff. In this action, as well as in all others, the evidence on the part of the plaintiff must support the averments of the complaint; neither fraud nor embezzlement will ever be presumed by the law. The burden of proof is on the party asserting the fact, and remains on him throughout. (*Heinemann* v. *Heard*, 62 N. Y., 448). All that is intended or included in the expression that the burden of proof is shifted or changed is, that proof has been presented which must prevail unless it is answered by countervailing testimony; that is, that the evidence introduced, if uncontradicted, establishes the fact alleged, and therefore requires balancing or obviating testimony; but it never was held that a defendant was required to prove that the fact was not as alleged by the plaintiff. (*Lamb* v. *Camden, etc., R. R. Co.*, 46 N. Y., 271.)

The position of the plaintiff seems to be that the burden of proof is devolved on the defendant to establish affirmatively the fairness of his dealings with the company by reason of the relation he sustained thereto. To this point a long list of cases are cited where actions or proceedings have been instituted for the proof of instruments beneficial to persons sustaining confidential relations to the maker, and where, as a rule of evidence, it has been held that that circumstance may, in some cases, require something more than formal proof of the execution of the instrument, not because fraud is presumed, but because it might be rendered more probable than in transactions between strangers. (*Post* v. *Mason*, 91 N. Y., 547.) *Cowee* v. *Cornell* (75 id., 100) belongs to the class of cases referred to, and as if to show that it never was to be extended to cases like this, the opinion states that " the trust and confidence or the superiority on one side, and weakness on the other, must be proved in each of these cases; the law does not presume them from the fact for instance that one party is a grandfather and old, and the other a grandson and young, or that one is an employer and the other an employe."

In the case of *Post* v. *Mason* (*supra*) it was decided that the fact that a will executed by one having full testamentary capacity contains a legacy to the draftsman, an attorney, who had long been the counsel of the testator, did not alone raise a presumption in aid of one seeking to overthrow the will that the influence of the

attorney was unduly exercised; nor did it, in the absence of evidence, warrant a presumption that the intention of the testator was improperly or fraudulently controlled; that it was therefore necessary in an action brought to set aside the will to give some evidence tending to show fraud or undue influence. This shows that the rule of evidence invoked against the defendant has been modified, but at its best it had no application to a case like this. There is here no person with confidential relations seeking to enforce a beneficial provision. The relation between these parties was that of master and servant, and if that was confidential the defendant is seeking nothing in this action. But in an action between master and servant, or principal and agent, was an implication of fraud or wrong ever made against the defendant. Was it ever held in such an action that the plaintiff was relieved from proof of his case by any presumption in his favor. " Deeply as the law abhors fraud and crime, it equally abhors the imputation of either, except upon clear and controlling evidence." (*Townsend* v. *Stearns*, 32 N. Y., 214.)

Our examination of the case must, therefore, proceed on the theory that the duty rested on the plaintiff from first to last on the trial to prove the embezzlement charged, and that the defendant was not required to prove or satisfy the court that the fact was not as alleged by the plaintiff against him.

On the threshold of the case we are met with the very serious objection that there is no proof of the substantial and fundamental fact, the body and foundation of the offense alleged. There is no proof that the plaintiff has lost any money, or that any of its money has been misappropriated or embezzled. The testimony introduced to show that on several occasions Moore put money in his pocket instead of placing it in the bag provided for that purpose proves but little. The money was all in his possession, and it was his duty to carry it to the office of the company; and proof that he placed some of it in his pocket falls far short of proof that he retained it and did not return it to the company as his duty was. The money could be carried in his pocket as safely and well as in the bag, and there is no proof that it was not. The worst that can be claimed for this proof is that it is a slight circumstance against the defendant.

The great fact relied on by the plaintiff to establish its claim and

maintain this action is the possession of property and money by Moore, in quantities and sums beyond all that could be accumulated by him from the salary he received. His bank accounts were introduced to show regular deposits during the time he was in the service of the plaintiff, and from this fact a presumption was sought to be raised that the money taken from the plaintiff was deposited as it came, but the inference does not result legitimately or necessarily from the fact. Neither does the fact exclude any inference but that of guilt. The defendant may have been in the possession of other resources, and it was not proven that he was not. His poverty and his small salary did not establish it, and he was not called on to prove the sources of his income. The law at all times presumes his innocence, and the plaintiff was required to prove his guilt by a preponderance of testimony; certainly that might have been done by circumstances leading directly to the result, but that conclusion could not be deduced from circumstances depending on conjecture. Proof was made of the possession of money and property, to render it probable that they were the result of the embezzlement claimed; but that testimony established but a probability at most and that does not amount to proof. Certain things are the usual concomitants of each other, and to establish the existence of one where direct proof is wanting we prove the existence of the other or co-relative fact, and thus seek to establish the existence or reality of the principal fact. Such was the mode of proof pursued in this case. It was sought to establish the embezzlement by proof of the possession of money, but the two facts are not co-relative and it is vicious and fallacious to reason from the one to the other.

But it is claimed that the defendant occupied a fiduciary relation to the plaintiff and was bound to account for all the property he received, and that the burden of proof was on him in such accounting. In the examination of this position it must be borne in mind that the complaint proceeds on the theory that the defendant has accounted, but that his accounts are false and fraudulent.

We cannot hold the defendant responsible under such a charge until it is established by evidence. No burden of proof was devolved on him until testimony was introduced by the plaintiff to establish the charge. If any inference can be drawn against the

defendant from his omission to testify or make explanations, only such as is warranted by the evidence introduced by the plaintiff will be indulged in. ( *Wylde* v. *Northern R. R. Co.*, 53 N. Y., 156.) So that we are brought directly back to the question of the plaintiff's testimony which we find insufficient to justify the conclusion claimed.

Some minor circumstances are relied on. When Moore was questioned by the officers of the plaintiff respecting his possession of property and money he made false and contradictory statements and denied that he had money on deposit in any bank. This had little tendency to show that he embezzled from the plaintiff what he had.

When arrested by the officers the defendant offered them $500 to allow him to go into his house for five minutes. Why this offer was made was not explained. Moore had nothing about his person which it would avail him to conceal. He had only his bank passbooks, and they were only duplicates of the books of the bank of which an inspection could at any time have been secured.

It is claimed by the plaintiff, and found by the trial court, that when the defendant was arrested he attempted to escape by flight, but there is no proof to sustain the finding. The testimony of the officer was that he saw Moore come out of his house when it was raining pretty hard and look down the street, and then turn from his house and go up a block, and then the witness and his brother officer saw him on the next corner, and he looked down and started to walk very quickly. Then the officers went over, and he had got into a run then, and they caught up to him just one door from his house, and arrested him. So far as appears, he did not know he was to be arrested, or that the officers were near him, or that he was flying from anything, or that he knew he was unsafe. He first walked very quick, and then got "into a run." That may have been induced by haste, or by the rain, or any other cause, but not by a desire to escape an arrest which he did not apprehend. There is no proof that he was then aware of the institution of any proceedings for that purpose, much less that the officers were then on his track.

After all has been said and considered, the case comes to this: The defendant was in the service of the plaintiff in a position to

embezzle its money, and with opportunity for malfeasance, but that alone will not justify the inference that it was committed; he is in the possession of wealth, but there is no proof that it was improperly acquired, and we do not think he was bound to reveal its sources. If a master who has believed his servant to be poor, after the lapse of years finds him in the possession of money and riches, may he summon him to court on suspicion and compel him to disclose his secret? Such a practice would re-establish the inquisition. Where would the limit be placed? Must all clerks and employes who acquire or accumulate money go into court and disclose the sources of their good fortune on the demand of their employer? We are aware of no rule of law rendering it permissible for one to demand the secrets of another because he is the employer and the other a financial clerk, and without such a rule this action has no support. This view renders the examination of the testimony, introduced on behalf of the defendant, unnecessary.

The judgment should be reversed, and a new trial granted, with costs to abide the event.

BARNARD, P. J., concurred.

Present — BARNARD, P. J., DYKMAN and PRATT, JJ.

Judgment reversed and new trial granted, costs to abide event.