(15 Misc. Rep. 179.)

### EDSON v. BARTOW et al.

(Supreme Court, Special Term, New York County. December 26, 1895.)

TRUSTEE EX MALEFICIO—EFFECT OF PRECATORY WORDS.

Testator, after making bequests in favor of various religious and charitable bodies, provided that if, for any reason, any legacies should fail, the amount thereof should go "absolutely to the persons named as my executors"; that, "in the use of the same, I am satisfied they will follow what they believe to be my wishes"; and that "I impose on them, however, no conditions; leaving the same to them personally and absolutely, without limitation or restriction." There was no evidence of any promise by the executors to apply the amount of such legacies according to testator's wishes. *Held*, that such bequests did not create a trust ex maleficio in favor of the religious and charitable bodies named in the will, but was given to the executors in their own right.

Action by Margaret B. Edson, individually and as executrix, against John A. Bartow and others, as executors, to impose a trust on a bequest to the executors, and to declare said bequest invalid. Judgment for defendants.

Joseph H. Choate, Treadwell Cleveland, and W. F. Peddrick, for plaintiff.

David B. Ogden, Edward M. Shepard, S. P. Nash, P. B. Olney, and Huntington & Rhinelander, for defendants.

RUSSELL, J.    The plaintiff seeks to impose a trust upon the property conveyed by the above-named executors to various religious, benevolent, and charitable institutions of the city of New York on the 23d day of June, 1890, and to have this court adjudge such trust to be invalid, so that the property conveyed shall be held to be intestate property of the deceased testatrix, and therefore passed to plaintiff's testator, Marmont B. Edson, the brother of Miss Mary A. Edson, who survived her nearly two years.    The executors of Miss Edson derived the title which they conveyed to the defendant corporations from this clause of the will of Miss Edson:

"If, for any reason, any legacy or legacies left by my will, or by any codicil, either pecuniary or residuary, shall lapse or fail, or for any cause not take effect, in whole or in part, I give and bequeath the amount which shall lapse, fail, or not take effect, absolutely, to the persons named as my executors.

In the use of the same, I am satisfied that they will follow what they believe to be my wishes. I impose upon them, however, no conditions; leaving the same to them personally and absolutely, and without limitation or restriction."

The plaintiff claims that this clause gave no title to the persons named as executors, because it is evident from the terms of the will and the three codicils, and the attendant circumstances, that the testatrix did not mean to give to them an absolute title, but adopted this method to dispose of her property for the benefit of various benevolent and religious institutions in the city of New York,—some named by her in her will, and some unnamed, but to be appointed,—in order to guard against any possible failure in the accomplishment of her intent arising from restrictive statutes, or indefinite expressions of testamentary disposition, and that the bequest to the persons named as executors was received by them upon such understanding. The will and codicils were drawn and executed in the month of May, 1890, and the testatrix died on the 29th of May, 1890. She received her property through her deceased brother Tracey R. Edson, who died in 1881, leaving an estate of over $1,600,000 to Marmont, Susan, and Mary A. Edson, his brother and two sisters. Susan died in 1885, leaving her share, except what she gave by some specific legacies, to her sister Mary; so that Mary, at her death, in May, 1890, left an estate of upwards of $1,000,000. Miss Mary A. Edson, after making some small specific bequests, devised and bequeathed to her executors one-third of her estate in trust, to apply the rents and profits to the use of her brother Marmont, if he survived her, with power of appointment to him by will, and to his issue in default of such appointment. She then made certain other specific bequests to various benevolent and religious institutions, and provided that if, by reason of want of incorporation, or any other cause, any society or institution should be unable to take the legacy, then such legacy should go to the president, treasurer, or chief executive officer. The residue of her estate she gave and bequeathed to her executors, to be divided by them among such incorporated religious, benevolent, and charitable societies in the city of New York, and in such amounts as should be appointed by them, with the approval of the Rev. Dr. Huntington, if living. Then follows the clause giving the property to the persons named as executors, in case of failure or lapse of any of the legacies. On the 23d day of June, 1890, and within a month of the decease of Miss Edson, the persons named as executors, by deed of gift delivered to Stephen P. Nash, gave to the societies specifically named for bequests the same interests which the grantors took or might take of the sums named in the will, specifically bequeathed to the corporations named, and appointed various other selected corporations of the city of New York for the remaining beneficial interests, which passed to them under the residuary bequests. Marmont B. Edson, the brother, contested the probate of the will on the ground of undue influence and fraud; both issues being decided adversely to him by the surrogate, and, on appeal, by the general term. 70 Hun, 122, 24 N. Y. Supp. 71. An action was brought by the executors for the construction of the will, pending

which Marmont B. Edson died, and the cause was continued against his widow and executrix, the present plaintiff. It was heard before Justice Lawrence, decided adversely to the plaintiff here (25 N. Y. Supp. 937), and also on appeal to the general term (77 Hun, 298, 28 N. Y. Supp. 401). By the decision of the general term, it was held that on the face of the will, extrinsic evidence being irrelevant in that action, no trust was impressed upon the property bequeathed and devised to the persons named as executors. By the decision of Justice Lawrence and that of the general term, it was held, in the action for the construction of the will, that various of the corporations named as legatees could not take, on account of the statute forbidding such bequests by testament made within two months of the decease of the testatrix; and it was also held that the bequest to the officer of a corporation, which could not take by reason of error in the name or description, and also those to be divided among such incorporated societies as should be appointed by the executors with the approval of the Rev. Dr. Huntington, were void for indefiniteness. It will be thus seen that a large part of the estate of the testatrix passed to the persons named as executors under the final clause of the will, in case that clause is effective.

In the consideration of the legal question presented to this court, which is a court of first instance only, no departure can be made from the lines of legal adjudication fixed by the general term in the two adjudications made by that branch of this court. By the determination in the probate case, it was held that the testatrix executed the will and codicils freely and understandingly, and all possible effect must be given to the adjudication of her intelligent understanding of the effect of the words she adopts in making a testamentary disposition of her entire property. Code Civil Proc. §§ 2626, 2627; Post v. Mason, 91 N. Y. 539. By the decision of the general term in the action for the construction of the will, it is adjudicated that the language used in the will is not sufficient to create any trust, as against the residuary legatees, and that they took a clear title, if we judge from the force of the will alone. On this trial, extrinsic circumstances are shown to justify the charge that in no event were the persons named to have absolute title, and so bring the case within the rule of law laid down by the leading case upon that subject (In re O'Hara, 95 N. Y. 403) and the Fayerweather Case (recently decided by the general term, and not yet officially reported) 36 N. Y. Supp. 576. The extrinsic circumstances relied upon are substantially these: The property of the deceased came from her brother Tracey, and she had indicated by previous wills an intention of leaving her property to her other brother, Marmont, the husband of plaintiff, in case of his surviving both of his sisters. The last will that she did make, and which is the subject of dispute, was made at a time when she was suffering under her last sickness, and during the month of her decease. The persons named as her residuary legatees were not those who were so allied in blood to her that she would care to leave to them the bulk of her estate, in any contingency, and she had in fact given specific bequests to two of them. One of the three resid-

uary legatees was her counsel, on whom she relied for advice, and he drafted the will and the codicils. They were all honorable and just men, and so regarded by her, and therefore her expressed or implied wish to them, as she well knew, would be as strong to them as their covenant under seal, to induce conformatory action. Within a month after her decease they justified her expectations by passing out of their own ownership or control every dollar of the property bequeathed to them, in accordance with her specific wishes, where those wishes were specifically stated in her will, and with her general wishes, where her purpose, as indicated, was general in its character. It is claimed, therefore, that those circumstances, together with the terms of the will and codicil, evidenced, by a contract without words, the true character of the interests bequeathed and received. What force have the attendant circumstances upon the questions of fact to be solved? Do they point to a conclusion which could not be drawn from the will itself? What does the will show her wishes were in regard to the property to be received by the executors? She had already attempted to dispose of all her property, and therein she had expressed what she wanted done with that which she might leave behind. There, and there alone, by the evidence in this case, do her wishes appear. If those wishes were carried out by her acquiescence, or by the judgment of the law, in case of attack, the executors would get nothing. It was only in the contingency that her intent should fail as to any part of the bequests she made that the executors would receive under the final residuary devise and bequest. Their receipt of any property under that residuary bequest was secondary to her primary intention, and only designed to be a last resort to effectuate that primary intent. And so, in regard to the interest bequeathed with these words, "In the use of the same, I am satisfied that they will follow what they believe to be my wishes," no extrinsic circumstances could possibly intensify the language of this will, in the demonstration of what she expected and intended. But we must be exact, and not loose and vague, in determining precisely where her wishes would ultimately carry her in all possible contingencies. The probate of the will determines that she executed each sentence of the will freely and understandingly, and therefore knew the force of the language which she was using. She is not acting as a testatrix executing a legal document which she does not understand the scope of, and relying upon reaching a result in a roundabout way, but determined to reach that result at all events, with the aid of the legal machinery which should protect her wishes. She voluntarily waives the enforcement of the law to guide whatever property the executors might personally take into the channels designed, by the words, "I impose upon them, however, no conditions; leaving the same to them personally and absolutely and without limitation or restriction." She thus relies upon the moral nature of the gentlemen she deals with, goes outside of the protection of the law, and clings only to their honesty of character, and not their legal duty. The whole breadth of her scheme is open. There is no secret trust. Any one may read her intention primarily, secondarily, and in the last contingency.

The scheme of this will, executed with a free, competent, and intelligent understanding, is:    First. To give minor, specific legacies to friends, which, she doubts not, will be unquestioned.    Second. To provide for her brother Marmont and his issue one-third of all she may leave, and no more.    Third. To give specific bequests to corporate institutions whose life and mission was to do good in this world, but with some doubt on her part as to all of these bequests being effective in law.    Fourth. To dispose of the residuum of her estate, which was more or less to be estimated, and not certain, by conferring upon her executors, with the approval of her rector, in whose judgment and purity of intent she had had occasion to have unbounded confidence, the power to appoint other benevolent and religious institutions as the beneficiaries, so that the last dollar which she did not give to friends would be spent in a way to gratify her own charitable heart.    Recognizing, however, the doubtfulness in parts of this residuary bequest, as well as the preceding one, she determines, as she has given all to friends that she cares, to dispose of that portion of her estate which might drop from the beneficiaries she designed it for, not on account of the uncertainty of her intention, but of the contingencies which might render those intentions ineffective, by giving absolutely such dropping residuum to three friends, in whom she has full confidence, with the faith that they will see their way clear to render effective her ineffective attempts, but still willing, in the exercise of her intelligent judgment, to place such residuum in their hands untrammeled, save by the protection of those moral considerations upon which she relied.    With her eyes open she was willing to take her chances.    There is no proof in this case of any promise by Mr. Parsons, or either executor, to pass over one dollar of the property which they might receive to any other institution whatsoever.    The argument of the learned counsel for the plaintiff is that because Mr. Parsons drafted the words of bequest, and the words of faith and belief, which Miss Edson subscribed, therefore Mr. Parsons, for himself and his executors, promised to do and perform that which Miss Edson herself believed they would do.    It seems to this court that this argument distorts the verbiage of the will.    Assuming that Mr. Parsons was the author of the language, and that Miss Edson was an automaton, then such construction is correct.    But I am controlled by the previous adjudication, as well as by the apparent evidences of the will itself, and must find that Miss Edson knew as well as Mr. Parsons the force of the language which she used, and certainly in regard to words which convey ideas familiar to all intelligent people and not those which are thoroughly understood by lawyers alone.    She herself says:

"I am satisfied that they will follow what they believe to be my wishes. I impose upon them, however, no conditions; leaving the same to them personally and absolutely, and without limitation or restriction."

Thus, in the last solemn utterance upon this subject in her life, she intelligently states it to be a matter of belief with her executors what her wishes are, and does not state it to be of knowledge.    She claims

no promise, but, in as strong words as might be used; releases them absolutely from all legal obligation; putting her successors outside of the pale of legal remedies, because she preferred to take the chances of their doing as they believed she wished, to giving the property to any one else.   No actual fraud is here claimed.   And there can never be constructive fraud where a person does just what she intends to do, of her own free will and intelligence, in passing title to others of that property which she deliberately determined to take away from her own succession.   The question then comes down to this, which must be decided in the case:   Is it impossible, under the law of the state of New York, for an owner of property, by deed, will, or transfer, to absolutely give to another that property in the full expectation or belief that that other will apply it to certain specific purposes, but at the same time conferring in the transfer papers the right to disregard his wishes if that other so chose?   Is there any such limitation upon the power of transfer?   Could the owner afterwards, when he had repented of his act,—there being no attendant fraud,—recover it back?   The design of the mortmain act was to protect the heirs and next of kin from the influence of advisers, exerted during the failing powers of the testator, and thus preventing a different disposition of property from that which a free and unter-rorized mind would otherwise make.   The statute (chapter 319 of the Laws of 1848) does not inhibit conveyances.   If, on the day her will was made, Mary A. Edson had, by power of attorney coupled with an interest which would enable the power to survive, author-ized the three gentlemen named as her executors to convey by ap-pointment, would there have been any legal objection to the validity of the transfer executed after her death?   Given her free and intel-ligent understanding of all of the terms of her will, there was no trust ex maleficio created by her devise and bequest to the three persons named as executors.   They had the full right to receive the residuum as their own.   They had the full power to follow the dic-tates of their conscience in divesting themselves of that property, and placing it where they knew the testatrix wished it to go.

So far as the general term decision in the construction case is ap-plicable to the case, it is authority for the conclusions I have reached. Judgment is rendered in favor of the defendants, dismissing the complaint, with costs.

Complaint dismissed, with costs.