(41 Misc. Rep. 230.)

### COVERT v. BRINKERHOFF.

(Supreme Court, Special Term, Dutchess County. June, 1903.)

1. SPECIFIC PERFORMANCE—AGREEMENT TO PURCHASE LEASE—ADEQUATE REMEDY AT LAW.

Where a purchaser of a long lease of a brickyard, buildings, machines, and trade fixtures did not claim that the vendor's action to enforce the contract was by suit at law, or that the vendor had an adequate legal remedy, such vendor was entitled to maintain a suit for specific performance of the agreement, a recovery of money damages being inadequate.

Suit by Nathaniel Covert against Abraham Brinkerhoff to compel defendant to specifically perform his agreement to purchase a lease of certain real estate, buildings, and fixtures. Judgment for plaintiff.

James L. Williams and Graham Witschief, for plaintiff.
Frank B. Lown and Edward E. Perkins, for defendant.

GAYNOR, J. Courts of equity decree the specific performance of contracts for the sale of realty or of personalty without any distinction, and at the suit of either purchaser or vendor, the remedy being mutual, on the ground that damages at law would not in the particular case afford an adequate remedy. In the case of ordinary chattels or merchandise, damages based on market value are as complete a remedy as delivery would be. It is different in the case of unique chattels, or any personal property which has a special or particular value or use to the purchaser. And in the case of land, or of things that relate to realty and are of a permanent nature, an action for damages would not as a rule be an adequate remedy.

In the present case the contract covers a lease for a term of 15 years of land used as a brickyard, with 13 years yet to run, and the buildings, machines and trade fixtures thereon, the lease providing for a renewal, or that the buildings and fixtures be valued by appraisement at the end of the term and paid for by the new tenant or the landlord. The subject-matter is of the nature of realty. It may seem that the plaintiff has an adequate remedy at law to recover the balance of the contract price; but that is the case in respect of the seller in all contracts for the sale of real property, where the reason why his suit for specific performance is entertained is that he has a vendor's lien. Moreover (and that suffices) the answer does not plead that there is an adequate remedy at law. Town of Mentz v. Cook, 108 N. Y. 504, 15 N. E. 541. Nor has the defendant claimed that this is an action at law and asked to have it sent to the jury calendar. If, therefore, the plaintiff is to be remitted to his remedy of damages, it has to be on the court's own motion.

The defence of fraud not being made out, the contract not being unconscionable, but for a fair price, and the plaintiff being able to perform, there is no reason not to grant the relief prayed for. It is true that the lease and other property were owned by a business corporation when the contract was made, and is now, but the plaintiff and another owned and own all of the shares of the corporation, and that other is under contract to transfer his shares to the plaintiff, and is ready to do so. There is no practical obstacle in the way of the plaintiff having one-half of the lease and fixtures transferred to the defendant, so that they two may continue the business as a copartnership, as was intended by both.

Since this case was tried my attention has fallen on the recent decision of the Court of Appeals in the case of Robinson v. New York El. R. Co., 175 N. Y. 219, 67 N. E. 431, which was a suit in equity for an injunction, though the report of the case does not show the fact. Indeed, the first paragraph of the opinion says it was an action for damages, but as the court must be deemed to have known that it was on the contrary a suit in equity, it must be understood as having squarely decided that an equity judgment will be reversed the very same as a common-law judgment for the erroneous admission of evidence instead of the appeal court looking to see whether the findings are not sustained without such evidence. This is something new in chancery or equity suits, though there has been an edging toward it for some time in this state, but only through a misconception, as was

the general opinion of the trial bench and bar. For the common-law rules of evidence were never adopted in the English High Court of Chancery, nor in the courts of chancery or equity in this country which adopted its powers, jurisdiction and practice. Everything was taken in chancery, unless for economy of time (and the exclusion of evidence might require the case to be sent back to have it supplied); and the chancellor was presumed in the end to know what was probative and what not. And appeals from chancery or equity judgments were not and are not upon bills of exceptions, as in the case of appeals from common-law judgments, but upon the whole case; and the question was not (and is not, unless for the last few days in this state) whether immaterial, irrelevant or incompetent evidence was to be found in the record, but whether the chancellor's findings of fact were on the whole sufficiently sustained by proper evidence, and substantial justice had been done (De St. Laurent v. Slater, 23 App. Div. 70, 48 N. Y. Supp. 1103); and if the chancellor or equity judge did not give the right judgment, the appeal court gave the judgment which he should have given, and ended the case. These were the rules and the procedure in all courts of equity. We still see this same practice in all the states where chancery is still a separate court. We see it just as plainly every day in equity causes in the federal courts, although there the same courts and judges administer equity as administer law. Evidence is taken before masters or commissioners; they exclude nothing; and in court the equity judge excludes evidence only to save the time of taking evidence plainly of no value; and then findings are made and judgment entered; all with no thought of the technical rules of evidence of the common-law courts having any standing in chancery or courts of equity, or being used on appeal to upset the judgment; for such courts never adopted such rules, nor have they been imposed upon them by legislation. Indeed, one of the distinctive features of equity is that it does not proceed upon the common-law rules of evidence, which have been very generally disapproved of by juridical writers, and have already lost their stringency in England. It is for these reasons that opinions in equity cases such as that in Carroll v. Deimel, 95 N. Y. 252, have all along been deemed inadvertent by a large majority of the bench and bar.

In this state the court of chancery was abolished, and equity is administered by the same courts and judges as try the common-law actions. But the two separate and distinct systems of law and equity have not been abolished or merged. They are just as distinct and separate to-day as they ever were. They are administered in the same court, but remain separate and distinct systems. Our Supreme Court now has its common-law side and its equity side, instead of there any longer being two courts, one for common-law actions and the other for equity suits; that is all. Dalton v. Vanderveer (Sup.) 29 N. Y. Supp. 342. Prior to the Constitution of 1894, common-law actions were tried in the circuit courts. The Constitution of 1846, which abolished the court of chancery and vested its jurisdiction in the Supreme Court, provided (article 6, § 10) that "the testimony in equity cases shall be taken in like manner as in cases at law," i. e., in open court before the judge instead of out of court and before masters, but it has

never been suggested that this imposed the common-law rules of evidence upon equity trials, and required equity judges to protect their trained minds from the danger of influences which might affect the untrained minds of jurors, and from which the common-law judge protects jurors by rulings upon evidence. Any decision of an appellate court which imposes such rules on courts of equity would seem to be judicial legislation.

The only question concerning the applicability of the common-law rules of evidence that ever arose in equity, was whether, when an issue of fact was sent thereout to a common-law court to be tried by a jury, and the verdict and proceedings were certified back, the errors of the common-law judge in admitting evidence had to be regarded on the question of allowing the verdict to stand, the same as in the common-law courts; but it was held otherwise, and that the evidence was to be considered as though taken in chancery, or the court of equity. This rule, to do away with all question, was adopted in our Code of Civil Procedure (section 1003) viz., that when an issue of fact in an equity suit is sent to a jury, "an error, in the admission or exclusion of evidence, or in any other ruling or direction of the judge, upon the trial, may, in the discretion of the court which reviews it, be disregarded, if that court is of opinion, that substantial justice does not require that a new trial should be granted." Strange indeed it would be if while this is the rule in respect of an issue of fact sent out of equity to a jury, it is not the rule if such issue be tried, or of the issues which are tried, before the equity judge himself, but that in the latter case the technical common-law rules of evidence apply. Post v. Mason, 91 N. Y. 549, 43 Am. Rep. 689. There would still seem to be some question about the whole matter, for it is not likely that such a striking inconsistency can be continued.

I have called attention to this matter, and discussed it to some extent, only to suggest to counsel for the plaintiff whether the stenographer's minutes of the trial should not be submitted to me, so that I can carefully review my rulings on questions of evidence, and if I find errors, declare a mistrial, or follow whatever course this new application of the common-law rules of evidence to equity trials requires, for some new practice must be devised to meet it. Since the first court of equity sat the undisputed rule has been that "in equity cases it will be presumed that the trial judge disregarded incompetent or irrelevant testimony; and errors in the admission of such evidence do not afford ground for reversal where there is sufficient testimony to support the decree." Jones on Ev. § 900. It may be noted in passing that while this quotation from a recent text-book expresses the whole matter, its reference to "errors" in the admission of evidence in equity is inadvertent, for there are no such errors in equity; the learned writer means what would be errors in a common-law court. But the decision in the Robinson Case is the very contrary of the rule just quoted. There the learned trial judge even took the supererogatory pains in his opinion, findings and judgment to declare that he discarded the evidence on which the reversal was placed, and based his findings on the other evidence in the case; but even that did not save the judgment, it being deemed an injustice that the party should be deprived of

the technical advantage of his exception in the game of lawsuit. That there was other evidence to sustain the findings was a thing not to be considered. The four cases cited by the learned court (Blashfield v. Telegraph Co., 147 N. Y. 520, 42 N. E. 2; Meyers v. Betts, 5 Denio, 81; Allen v. Way, 7 Barb. 585; Bloss v. Morrison, 47 Hun, 218) turn out on inspection to be common-law cases. That they were tried before referees does not matter, for when you get into a common-law court the rules of evidence of that court apply, whereas they never existed in a court of equity.

Judgment for the plaintiff.